In the Matter of the Application of A. LAWRENCE JENSEN, Appellant, for the Appointment of a Referee to Hear and Audit His Claim for Legal Expenses against THE CITY OF NEW YORK, Respondent, Pursuant to Chapter 700 of the Laws of 1899.

*Constitutional law — the repayment of expenses incurred by a public officer, in his successful defense against removal on a criminal charge, is not a public purpose.*

Chapter 700 of the Laws of 1899, the purpose of which is to enable any city, county or State officer who, prior to its passage, had successfully defended a proceeding to remove him from office, or a prosecution for a crime alleged to have been committed in the performance of his official duties, to obtain from the city, county or State treasury the reasonable counsel fees and expenses incurred by him, and which authorizes the imposition of a tax by the city or county to retire revenue bonds issued to pay such claims of city or county officers, is unconstitutional so far as it authorizes the payment of the counsel fees incurred by a city official who had successfully defended a prosecution connected with his official duties, which had terminated before the law took effect.

It constitutes an improper exercise of the power of taxation for a private purpose, there being no obligation on the part of a municipality to pay expenses thus incurred, and contravenes section 10 of article 8 of the State Constitution, which provides that no county, city, town or village shall be allowed to incur any indebtedness, except for county, city, town or village purposes.

*Quære,* as to the constitutionality of a statute, authorizing the reimbursement of innocent parties to criminal prosecutions, if its operation were limited to prosecutions instituted after its passage.*

APPEAL by the petitioner, A. Lawrence Jensen, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 18th day of July, 1899, denying his application for the appointment of a referee pursuant to chapter 700 of the Laws of 1899.

*Frederick E. Crane* [*James D. Bell* with him on the brief], for the appellant.

*William J. Carr* [*Luke D. Stapleton* with him on the brief], for The City of New York, respondent.

WILLARD BARTLETT, J.:

This appeal involves the construction and constitutionality of chapter 700 of the Laws of 1899, which became a law on the twenty-

_____

* See *Matter of Straus (ante,* p. 425).

fifth day of May in that year, with the approval of the Governor, having been passed by the Legislature when three-fifths of the members of each house were present. It is entitled "An act to provide for the defrayal of expenses of legal proceedings paid or incurred by certain officers and officials of this state and of the cities and counties thereof." The statute relates to two classes of claimants : (1) City and county officers, and (2) State officers. The purpose of the enactment was to enable any such officer to obtain, either from the city or county treasury or from the State treasury, as the case may be, a sum equal to such reasonable counsel fees and expenses as he has paid or incurred in any trial or proceeding to remove him from office, or any prosecution for a crime alleged to have been committed in the performance of his official duties or in connection therewith, in which trial or proceeding the prosecuted officer has been successful.

The act prescribes different methods of procedure in the case of city or county officers on the one hand, and State officers on the other. The 1st section permits a city or county officer, coming within the class of successful defendants aforesaid, to apply within three months to a justice of the Supreme Court "for the appointment of a referee to hear, examine into and report concerning the claim of the officer, or official, against the city or county in which the trial or proceeding against such officer, or official, was commenced, arising out of reasonable counsel fees and expenses paid or incurred by such officer or official." The same section further provides that the justice of the Supreme Court shall appoint a referee, who shall hear and examine into the claim and report his determination to the justice. "If the court shall confirm the report of the referee, the claim shall be audited by the said referee upon receipt of a certified copy of the order of confirmation."

The 3d section of the statute prescribes the time within which claims must be filed and the form in which they are to be presented. The 4th section directs the annual imposition of a tax in the several cities or counties of the State to raise an amount sufficient to pay revenue bonds issued by the officer of the city or county empowered to issue the same in anticipation of the collection of taxes for the purpose of paying the respective claims allowed and audited by referees under the act. This provision completes the

scheme in regard to the claims of city or county officers. The 2d section relates solely to like claims in behalf of State officers or officials, and empowers the State Comptroller to inquire, examine into, audit and determine the same. Neither in that section nor anywhere else in the statute is any provision made for the payment of the claims of State officers after the prescribed audit by the Comptroller.

It will be observed that the act requires no notice to be given of the presentation or prosecution of the claim to any officer of the city or county against which it is made.

A. Lawrence Jensen, the petitioner in this proceeding, was the chief-clerk of accounts in the office of the comptroller of the city of Brooklyn when that city became part of the Greater New York, and he continued to hold the same official position in the department of finance of the new city after consolidation. In March, 1896, he was indicted in Kings county for the crime of having accepted a bribe or gratuity for the performance of an official act while acting as chief clerk of accounts in the office of the comptroller of the city of Brooklyn. In July, 1898, the comptroller of the city of New York removed the petitioner from his position or employment in the department of finance. On May 10, 1899, the petitioner was brought to trial upon the indictment for official misconduct already mentioned, and on May 15, 1899, the jury rendered a verdict of acquittal. He has instituted this proceeding under chapter 700 of the Laws of 1899, to recover from the city of New York the sum of $2,461.70, being the amount of counsel fees and expenses which he alleges that he has paid or incurred by reason of such unsuccessful criminal prosecution. Although not required to do so by the terms of the statute, he gave notice to the corporation counsel of his application to a justice of the Supreme Court in Kings county for the appointment of a referee. The application was denied in an order which, though in form an order of the Supreme Court, has been treated upon this appeal as a justice's order under the statute; and from that order the petitioner now appeals.

It is to be borne in mind that we have here to deal with a prosecution that had wholly terminated before chapter 700 of the Laws of 1899 took effect. The petitioner was acquitted on May 15, 1899; the act did not become a law until May 25, 1899, ten days later.

As applied to a case of this kind, in which the claim of the officer sought to be recognized arose wholly before the legislation designed to give it validity, I think the enactment goes beyond the constitutional power of the Legislature in two respects.

Independently of any limitation in the Constitution on the subject, the taxing power of the Legislature is not absolutely unrestricted. The general doctrine prevails in the decisions of the State courts and the Supreme Court of the United States that the power of taxation can be exercised only for purposes which in some way promote the public interest. " It is the first requisite of lawful taxation," says Chief Justice Cooley, " that the purpose for which it is laid shall be a public purpose." (Cooley Taxn. [2d ed.] 55.) In *Loan Association* v. *Topeka* (20 Wall. 655) Mr. Justice MILLER, speaking for the Supreme Court of the United States, said : " We have established, we think, beyond cavil, that there can be no lawful tax which is not laid for *a public purpose.*" The Supreme Judicial Court of Massachusetts, in denying the power of the Legislature to authorize a town to raise money by taxation for the purpose of refunding sums paid by individuals for substitute soldiers in the Civil war, said : " A statute conferring such power would be obnoxious to the objection that it authorized the raising of money by taxation for the exclusive benefit of particular individuals ; that it relieved one citizen from the performance of a legal duty at the public expense, and appropriated money for a private purpose which could only be raised and used for public objects. It is hardly necessary to say that a statute designed to accomplish such purposes would be against common right, and would transcend the authority conferred on the legislature by the constitution." (*Freeland* v. *Hastings,* 10 Allen, 570, 589.) The principle of constitutional law under consideration has nowhere been more clearly enunciated than by our own Court of Appeals in the recent case of *Bush* v. *Board of Supervisors* (159 N. Y. 212), in which it was declared as essential to valid taxation, " that the money to be raised must be required for some purpose that in some sense, at least, can be said to be public ; " and in which the court condemned as unconstitutional an act passed by the Legislature, in 1892, which assumed to authorize the levy of a tax to pay $300 apiece to drafted men who served personally or sent substitutes to serve in the Union army in the war with the

Confederate States. This, said the Court of Appeals, was, "in. effect, a method of taking private property, not for any public use,. but for the benefit of private individuals."

It follows as a corollary to this main proposition that the power of taxation cannot be exercised in order to provide for gifts or gratuities to individuals. (*Bush* v. *Board of Supervisors, supra;* *Mead* v. *Acton,* 139 Mass. 341; *Perkins* v. *Inhabitants of Milford,* 59 Maine, 315.) In the *Bush* case it is expressly declared that the Legislature cannot authorize taxation for the purpose of making gifts or paying gratuities to private individuals. In the Maine case, last cited, the question was whether a town could raise money by taxation to refund a voluntary contribution made by an individual to aid the town in procuring soldiers to serve in the Civil war. In answering this question in the negative the court said: "This is not a gift for any public purpose. It is a gift as a recompense for past generosity. If a town can give to A., it can give to B. If it can give little, it can give much. If it can give, then every man holds his estate subject to the will of the majority, who can give away as much or as little as they please. Taxation is for public purposes, and for those the right of the government to impose taxes is unlimited. Taxation is imposed by the State to meet its exigencies. But taxes to meet the plaintiff's claims would be taxes for a private purpose — for a gift to an individual. The Constitution gives no authority to raise money to give away. * * * If it did, 'all protection to property would cease."

In what has thus far been said it is not intended to deny the power of the Legislature to recognize equitable claims against the government based solely on moral obligations, and to provide for the payment of such claims by taxation. Cases in which this power has been exercised are not uncommon. A few instances may be given. Thus, in *New Orleans* v. *Clark* (95 U. S. 644) certain city bonds were alleged to be invalid because the city in issuing them had failed to provide in the same ordinance for the payment of the principal; and the Supreme Court of the United States held that the Legislature could compel the city to pay them, inasmuch as the municipality had received an equivalent in work done, so that the bonds "represented an equitable claim against the city." In *Friend* v.

*Gilbert* (108 Mass. 408), the town of Gloucester had made a contract with one Currier to build a town house. Currier employed one Watson to do the wood work. After it was done the town voted to pay Watson $3,000 additional compensation for his labor and material. The court held the appropriation to be a valid exercise of power under a statute authorizing towns to grant and vote such sums as might be required for all necessary charges therein, and declared that the fact that the town was under no legal obligation to pay did not make it a gift without equivalent. It was true the town had no express contract with Watson, but the court did not regard the proposed payment to him as a mere gratuity. It was not a gift without consideration, but compensation for the benefits which the town had derived from his services. In *Lycoming* v. *Union* (15 Penn. St. 166) the Supreme Court of Pennsylvania in applying the doctrine that where a moral obligation exists the Legislature may give it legal effect, sustained the constitutionality of a statute providing that Union county should be reimbursed by other counties for the expense of trying certain cases which had been moved from those counties to Union for trial. Here an actual expenditure had been made by the latter county for the trial of causes which did not originate there.

The leading case in this State upholding the power of taxation in recognition of a moral obligation is *Town of Guilford* v. *Supervisors of Chenango County* (13 N. Y. 143). There two highway commissioners claimed reimbursement from the town for the costs which they had been obliged to pay in a litigation instituted by them by direction of the voters of the town. These officers were out of pocket on account of moneys which they had expended not only for the benefit of the town, but at the express instance of the electors ; and a more equitable claim could hardly be imagined. In holding that the Legislature could impose a tax on the town to pay these costs, Judge DENIO, however, asserted the legislative power of taxation in very broad terms. "The legislature," he said, "is not confined in its appropriation of the public moneys, or of the sums to be raised by taxation in favor of individuals, to cases in which a legal demand exists against the state. It can thus recognize claims founded in equity and justice in the largest sense of these terms, or in gratitude or charity. Independently of express consti-

tutional restrictions, it can make appropriations of money whenever the public well-being requires or will be promoted by it; and it is the judge of what is for the public good.".

If this dictum is to be regarded as sanctioning the exercise of the taxing power for the purpose of bestowing the money gratuitously upon individuals who have rendered no service to the public, it must be deemed to have been overruled. by the much more recent declaration of the Court of Appeals in the *Bush* case. While ordinarily the determination of the question whether a purpose is public and, therefore, one which will justify the imposition of a tax, is a question to be determined by the Legislature in the exercise of a very broad discretion, yet that determination is not conclusive upon the judicial branch of the government. "In any case in which the Legislature shall have clearly exceeded its authority in this regard, and levied a tax for a purpose not public, it is competent for any one who in person or property is affected by the tax, to appeal to the courts for protection." (Cooley Tax. [2d ed.] 55.)

In *Wrought Iron Bridge Co:* v. *Town of Attica* (119 N. Y. 204) the statute under consideration assumed to legalize the acts of a town board of auditors in reference to the erection of an iron bridge, which had been adjudged ineffectual to bind the town in a suit to recover the contract price; and the court upheld the legislation upon the principle that "claims, supported by a moral obligation and founded in justice, where the power exists to create them, but the proper statutory proceedings are not strictly pursued, or for any reason are informal and defective, may be legalized by the legislature and enforced either against the state itself or any of its political divisions through the judicial tribunals." It should be observed that the liability was one which the town had the legal capacity to incur, if it proceeded in the prescribed manner, while in the case at bar, no city or county possessed any power to assume any such obligation as is sought to be enforced herein. This I shall endeavor to show further on in this opinion.

In the case of the petitioner, and other officers similarly situated, there was no obligation whatever, legal, equitable or moral, on the part of the State or any municipality in the State, to pay to the acquitted individual the expenses which he had sustained by reason of being subjected to an unsuccessful prosecution for official miscon-

duct. In the criminal courts of this State hundreds of persons every year are found to be not guilty of the crimes with which they are charged; yet no one, so far as I know, has ever seriously proposed that the State should reimburse all these acquitted persons for the expenses to which they have been put in obtaining exoneration. The hardship of being subjected to a criminal prosecution is, of course, generally recognized where the acquittal is based on the innocence of the accused. In many instances, however, the acquittal has nothing to do with the merits of the case, as for example, where there is a failure of proof owing to the absence of a material witness, or where the Statute of Limitations is successfully pleaded. But even in cases of established innocence, the view which has thus far prevailed has been that he who is criminally prosecuted with apparently good cause must bear the burden of his own defense as a part of the price he pays for the protective influence of our institutions of government. And so it happens that it is only when the prosecution is instituted without adequate reasons and with malice, that the law permits him to charge those expenses upon the person who has wrongfully charged him with crime. The sense of hardship of which I have spoken, however, has never heretofore so impressed itself upon the community as to be regarded as raising an equitable claim against the State for the reimbursement of their expenses on the part of acquitted defendants generally in criminal cases; and it is impossible to perceive any distinction in favor of officers prosecuted for official misconduct which should give rise to a moral obligation in their case not existing in favor of non-official defendants.

The novelty of the idea of thus providing retrospectively for the expenses of successful defendants in criminal cases may properly be considered in determining the question whether the purpose is really a public purpose or not. In deciding whether the object for which a tax is proposed to be levied falls within one category or the other, the courts " must be governed mainly by the course and usage of the government, the objects for which taxes have been customarily and by long course of legislation levied, what objects or purposes have been considered necessary to the support and for the proper use of the government, whether State or municipal. What-

ever lawfully pertains to this and is sanctioned by time and the acquiescence of the people may well be held to belong to the public use, and proper for the maintenance of good government, though this may not be the only criterion of rightful taxation." (Opinion of MILLER, J., in *Loan Association* v. *Topeka*, already cited.)

Difficult as it would be to enumerate all the purposes which may be deemed public enough to warrant the exercise of the taxing power, it is safe to say that the reimbursement of acquitted officials for past expenses incurred in defending themselves against unsuccessful criminal prosecutions, has never yet been included among the objects for which taxes have been customarily levied or been sanctioned by time and the acquiescence of the people.

A different question would arise in considering legislaticn for the reimbursement of innocent parties in criminal prosecutions, if the legislation were wholly prospective in its operation, instead of relating (as does the act of 1899) only to past cases where the expenses were incurred without any assurance that the State would make them good. The purpose that we have to deal with here, and which seems to me to lack the public character necessary to sustain valid taxation, is a purpose to pay money on account of occurrences wholly past before the legislation took effect, which imposed no legal or moral obligation on the State at the time they happened, and from which the State received no conceivable benefit. It may be that purely prospective legislation announcing the intention of the State to pay such expenses incurred in future cases would be deemed expressive of a public purpose, and that the assurance thus given might be regarded as creating such an obligation as to relieve the subsequent payment from the objection that it was a mere gratuity. These questions, however, we are not called upon to decide now. Upon this branch of the case it seems sufficiently clear that the general scheme of chapter 700 of the Laws of 1899 contemplates the imposition of a tax for the purpose of paying gratuities to the classes of claimants for whose benefit the act is intended, and that, under the general doctrine which has been discussed, the Legislature had no constitutional power to impose a tax for this purpose.

The second fundamental objection to the statute in question is that it was enacted in violation of that provision of section 10 of article VIII of the Constitution, which provides that no county, city,

town or village shall be allowed to incur any indebtedness except for county, city, town or village purposes. The 4th section, in effect, compels the counties and cities against which claims shall be established under the act to incur indebtedness for the purpose of paying the claims. This, in my judgment, is neither a city nor a county purpose. The claim of the petitioner in the present proceeding is against the city of New York. A city purpose, according to the general definition laid down in a recent case by the Court of Appeals, "must be necessary for the common good and general welfare of the people of the municipality, sanctioned by its citizens, public in character and authorized by the Legislature." (*Sun Publishing Assn.* v. *Mayor*, 152 N. Y. 257.) I have already endeavored to show that no purpose of a public character was to be promoted by the proposed payment of those claims, and we have been referred to no case in which such a scheme, or anything like it, has ever been held to be included within the category of city purposes.

If the foregoing views are correct, the learned judge at Special Term was right in refusing to appoint a referee to examine into the claims of the petitioner.

The order appealed from should be affirmed.

All concurred.

Order affirmed, with ten dollars costs and disbursements.