In the Matter of the Petition of WILLIAM C. GREENE, as Receiver of the MERCHANTS' BANK OF LOCKPORT, Appellant, for the Appointment of a Referee to Pass upon His Claim against the COUNTY OF NIAGARA, Respondent.

CONSTITUTIONAL LAW — LEGISLATURE HAS NO POWER TO VACATE JUDGMENT UPON THE MERITS RENDERED IN FAVOR OF COUNTY . Chapter 614 of the Laws of 1899, which in effect vacates a judgment upon the merits in favor of a county defendant and grants the plaintiff a new trial before a referee to be specially appointed for the purpose and directs the levy of a tax to pay any amount found due him, is unconstitutional and void, since it is virtually a bestowal of a gratuity in violation of sections 9 and 10 of article 8 of the Constitution.

*Matter of Greene*, 55 App Div. 475, affirmed.

(Argued February 25, 1901; decided April 16, 1901.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered

December 4, 1900, reversing an order of Special Term appoint-
ing a referee under chapter 614 of the Laws of 1900.

This appeal involves the validity of chapter 614 of the
Laws of 1900, entitled "An act for the relief of William C.
Greene, as receiver of the Merchants' Bank of Lockport."

Section 1 of this act authorized an application by Greene
as receiver to a Special Term of the Supreme Court for the
appointment of a referee to ascertain and report the amount
of moneys advanced by the bank to Arnold as county treasurer
in excess of the amount on deposit to his credit in said bank,
for the purpose of paying, and which was used to pay, obliga-
tions of the county, and whether there existed any equities
which should be considered by way of reduction of such
amount and to report thereon.   Section 2 of the act author-
ized the court to appoint a referee for such purpose, and upon
the coming in of his report, if it should appear that any sum
of money was advanced by the bank to the treasurer to pay
obligations of the county in excess of the deposits in the bank
to the credit of the treasurer, and that there was no legal or
equitable offset, to confirm the report.   Section 3 made it
the duty of the board of supervisors to audit, allow and pay
the claim with interest from the date of the closing of the
bank.   Section 4 provided that the county should receive
notice of the application and be entitled to be heard, and that
the Statute of Limitations should not be a bar to the proceedings
therein authorized.

The Appellate Division held the act to be unconstitutional
upon the ground that it violates section 16 of article III of the
State Constitution, which provides that "No private or local
bill, which may be passed by the legislature, shall embrace
more than one subject, and that shall be expressed in the
title," and also because it grants a new trial to the receiver
upon issues which in an action in the Supreme Court between
himself and the county of Niagara had been by final
judgment determined against him.

In June, 1894, William C. Greene, as receiver of the Mer-
chants' Bank of Lockport, brought an action in the Supreme

Court against the county of Niagara, Timothy E. Ellsworth, Josiah H. Helmer and Joshua S. Helmer to recover from said Ellsworth $7,399.45, the amount of alleged overdrafts from said bank as of date October 11, 1893, by John J. Arnold as county treasurer of the county of Niagara, the proceeds of which overdrafts said Arnold had used to pay the obligations of the county, to secure the payment of which to the bank said Arnold did by writing dated October 11, 1893, assign to the bank a promissory note for $4,669.31, made by the defendants J. S. and J. H. Helmer, and a draft for $5,130.70, made by said J. H. Helmer, but which said Arnold had about the same date deposited with the defendant Ellsworth, who refused to deliver them to the plaintiff, alleging that the county of Niagara owned the same, and that he, Ellsworth, held the same for the benefit of whoever should be found to be entitled thereto ; that Ellsworth had collected said note and draft from the makers thereof, upon his agreement with them to hold the proceeds for the benefit of whoever should prove to be the rightful owner thereof ; that said county did claim to be such owner.

The county of Niagara answered to the effect that Arnold at the same time that he was treasurer of the county was also cashier of the bank, and of its predecessor, the First National Bank of Lockport, and that during the same time the defendant J. S. Helmer was the president of the Merchants' Bank and of its predecessor, the First National Bank, and that the defendant J. H. Helmer was the vice-president thereof ; that prior and up to October 11, 1893, Arnold had fraudulently misappropriated at least $65,000 of the funds of the county in his hands as such treasurer, and that he then deposited said note and draft with the defendant Ellsworth in order to replace in part such misappropriated funds, of which the said Arnold had wrongfully advanced $18,000 and upwards to the said bank, the said bank and its said officers well knowing the same to be of the funds of said county, none of which the bank had repaid, and that the said draft and note were given to him by the said bank and its officers to secure in part the

repayment of such wrongful advances, and the county asked that said Ellsworth pay to it the proceeds of such note and draft.

The defendant Ellsworth answered, disclaiming any interest other than as custodian of the fund, with the consent of the parties, subject to the order of the court. The Helmers did not answer.

The final judgment as affirmed by the Court of Appeals awarded the fund to the county. (8 App. Div. 409; 31 App. Div. 634; 161 N. Y. 651.) The referee in that action found that, March 1, 1890, the First National Bank was changed to the Merchants' Bank of Lockport, the latter acquiring all the property rights and effects of the former; that Arnold was cashier, J. S. Helmer, president, and J. H. Helmer, vice-president of both banks, and they managed the business of the latter bank from its organization to its suspension, which occurred October 6, 1893; that the bank soon after passed into the hands of the plaintiff as receiver; that when the change in name and organization of the bank was made, the bank had some objectionable paper which said officers desired to retire, and for that purpose Arnold advanced to the bank $12,000 of the county funds by giving to the Helmers or the bank his checks as county treasurer therefor, and taking as part security therefor a note for $4,400 made by the two Helmers; this was the original note, for which the note mentioned in the complaint was the last renewal, and the parties then understood and intended that it was to secure the county, and was not the individual property of Arnold. The bank subsequently repaid the treasurer all of the $12,000 except the $4,400 thus secured. In 1891 the state authorities objected to certain paper held by the bank, and in order to retire it Arnold advanced to the bank, by his checks as county treasurer, $5,150, and received as security therefor to the county, as the bank understood and intended, the draft of J. H. Helmer mentioned in the complaint. The bank did not repay this advance. It thereafter frequently obtained moneys of the county treasurer in like manner, but afterwards restored them.

On September 21, 1893, J. S. Helmer, the president of the bank, knew that Arnold personally was a defaulter to the bank for about $30,000, and that his account as county treasurer was overdrawn. In September, 1893, after the 21st, the president permitted Arnold to overdraw his account by three checks, as county treasurer, aggregating $7,906.55. The referee found that Arnold delivered the note and draft mentioned in the complaint to Ellsworth to protect in part Arnold's sureties upon his bond as county treasurer; also that the total overdraft of Arnold's account, as county treasurer, October 11, 1893, was $6,428.33; that of the moneys overdrawn, on August 30, 1893, Arnold paid $1,550.31 on an indebtedness of the county of Niagara to the county of Erie; on September 9, 1893, $1,826.22 like indebtedness to the Willard asylum, and on September 29, 1893, $3,906.55 for state taxes — total, $7,283.08; that the credits to his account after August 30, 1893, reduced the overdraft to $6,428.33.

The referee further found that Arnold's advances to the bank in 1891, for which he received the note and draft as security, were charged to his account as county treasurer, and that the overdraft would not exist if the bank had repaid the amount and his account had been credited with the payment.

*David Millar* for appellant. The act under consideration is a valid exercise of the taxing power of the state. The legislature, in the absence of constitutional restriction, has power to enact the bill under consideration. (*Town of Guilford* v. *Board of Suprs.*, 13 N. Y. 143; *People ex rel.* v. *Board of Suprs.*, 67 N. Y. 109; *Gordon* v. *Cornes*, 47 N. Y. 608; *W. I. B. Co.* v. *Town of Attica*, 119 N. Y. 204.) The point that the act deprived the county of the right of trial by jury and hence is unconstitutional is without merit. (*Darlington* v. *Mayor*, etc., 31 N. Y. 164.) The act under consideration is not unconstitutional on account of any defect in its title. (*People ex rel.* v. *Briggs*, 50 N. Y. 553; *Matter of Knaust*, 101 N. Y. 188; *Bd. Water Comrs.* v. *Dwight*, 101 N. Y. 9; *Brewster* v. *City of Syracuse*, 19 N. Y. 116; *W. I. B. Co.*

v. *Town of Attica*, 49 Hun, 513.) It was competent for the legislature to direct a reimbursement of the bank. What the legislature could authorize in advance it may validate and approve after it is done. (*Brown* v. *Mayor, etc.*, 63 N. Y. 240; *People* v. *Denison*, 80 N. Y. 656; *People* v. *Stephens*, 71 N. Y. 529.)

*Chauncey E. Dunkleberger* for respondent. The act in question is unconstitutional and void, in that it directs or empowers the court to order a new trial or rehearing in respect to matters and things involved in a former action, which were settled and determined by the judgment rendered therein. (*Greene* v. *County of Niagara*, 8 App. Div. 409; *F. Nat. Bank* v. *Board of Suprs.*, 106 N. Y. 488; *Clark* v. *Board of Suprs.*, 107 N. Y. 553; *Power* v. *Vil. of Athens*, 99 N. Y. 592; *Craft* v. *S. B. R. R. Co.*, 150 Mass. 207, 210; *McDonald* v. *Mayor, etc.*, 68 N. Y. 23; *Parr* v. *Vil. of Greenbush*, 72 N. Y. 463; *Pray* v. *Hegeman*, 98 N. Y. 351; *Reich* v. *Cochran*, 151 N. Y. 122; *Barber* v. *Kendall*, 158 N. Y. 401.) This statute cannot be sustained by virtue of the legislative power over taxation or its power of control over municipal corporations. (*F. Nat. Bank* v. *Board of Suprs.*, 106 N. Y. 494; *Tillinghast* v. *Merrill*, 151 N. Y. 135; *Craft* v. *S. B. R. R. Co.*, 150 Mass. 210; *A. Nat. Bank* v. *South Hadley*, 128 Mass. 507; *R. R. Nat. Bank* v. *Lowell*, 109 Mass. 214; *Town of Guilford* v. *Board of Suprs.*, 13 N. Y. 143; *Weismer* v. *Vil. of Douglas*, 64 N. Y. 98; *W. I. B. Co.* v. *Town of Attica*, 119 N. Y. 204; *Board of Suprs.* v. *State*, 153 N. Y. 286; *Matter of Straus*, 44 App. Div. 427.) The statute is repugnant in its design, purpose and effect to article 8, section 10, of the Constitution, which provides that no county shall give any money or property in aid of any individual, association or corporation. (*Greene* v. *County of Niagara*, 8 App. Div. 412; *Bush* v. *Board of Suprs.*, 159 N. Y. 212; *Matter of Straus*, 44 App. Div. 427; *Matter of Jensen*, 44 App. Div. 514; *Mercer* v. *Floyd*, 24 Misc. Rep. 164; Cooley on Const. Lim. [6th ed.] 283, 286; Dillon on

Mun. Corp. §§ 75, 76.) The act is unconstitutional in that it deprives the county of trial by jury, and attempts to take away the common-law jurisdiction of the Supreme Court in a particular case. ( *Wynehamer* v. *People*, 13 N. Y. 426 ; *Chapman* v. *Forbes*, 123 N. Y. 532 ; *People* v. *A. & S. R. R. Co.*, 57 N. Y. 161 ; *Wheelock* v. *Lee*, 74 N. Y. 495 ; *Alward* v. *Alward*, 15 Civ. Pro. Rep. 151 ; Code Civ. Pro. § 968 ; *B. & J.* v. *Mayor, etc.*, 42 Barb. 552 ; 45 Barb. 359 ; 2 Keyes, 395.) The provisions of the statute are both of a private and local character, but the subject is not expressed in the title. (*Parfitt* v. *Ferguson*, 3 App. Div. 176 ; *People ex rel.* v. *Board of Suprs.*, 43 N. Y. 11 ; *Astor* v. *Arcade Ry. Co.*, 113 N. Y. 93 ; *Matter of Mayor, etc.*, 99 N. Y. 570 ; *Johnston* v. *Spicer*, 107 N. Y. 185 ; *McCabe* v. *Kenny*, 52 Hun, 518 ; *Devlin* v. *Mayor, etc.*, 63 N. Y. 20 ; *People ex rel.* v. *Lawrence*, 36 Barb. 192 ; *People ex rel.* v. *Hills*, 35 N. Y. 453.)

LANDON, J.   The issue in the action of the receiver against the county of Niagara was whether the bank or the county was equitably entitled to the proceeds of the note and draft which Arnold, the defaulting treasurer, had deposited with Ellsworth. The receiver was defeated because he was not, as against the county, equitably entitled to recover the overdraft. Whatever his rights were against Arnold, he had none against the county. The referee found in substance that the alleged overdraft was a fiction. It was produced by charging Arnold's account as county treasurer with $4,400 and $5,150 which Arnold, in 1891, to the knowledge of the bank, wrongfully advanced to it from the county funds. Thus the bank appropriated the very money it conspired with the treasurer to abstract from the county, and the amount appropriated was used to swell the total of his indebtedness to the bank. The more the bank could induce the treasurer to abstract for its use, the greater would be his overdraft on its books. If the bank had refunded the money and taken back its note and draft, and credited the treasurer's account with the same, there would have been no overdraft. By the judgment of

the court the proceeds of the note and draft were used for the purpose for which they were originally intended, namely, to restore to the county the money that the bank had wrongfully obtained from it; and, continuing the method of bookkeeping employed by the bank, when the bank, under the judgment of the court, paid the note and draft through Ellsworth to the county, the treasurer's account should have been credited with the amount, and thus the overdraft would have disappeared. The assignment by Arnold of the note and draft to the bank could have no rightful purpose except to restore to the county the funds misappropriated on the pledge of these securities. That Arnold used the proceeds of his alleged overdraft to pay the obligations of the county does not aid the bank or its receiver. In equity there was no overdraft, and the judgment in the former action concludes the receiver upon that issue. (*Young* v. *Farwell*, 165 N. Y. 341.)

After the final judgment against the receiver, chapter 614, Laws of 1900, was passed. Its letter and purpose are to vacate the judgment obtained by the county and to grant a new trial to the receiver before a referee to be specially appointed for the purpose. In an action between private parties, it is well settled that after the litigation is closed by final judgment, the legislature cannot grant a new trial. To do so would be to deprive the successful party of his established rights and vested property, and for the legislative department to nullify the accomplished acts of the judicial department. The legislature has control of remedies by which final judgments may be obtained, but cannot confiscate, recall or put again in jeopardy the rights and property established by judgments already obtained. (*Germania Savings Bank* v. *Village of Suspension Bridge*, 159 N. Y. 362; *Roberts* v. *State*, 30 App. Div. 106; affirmed, 160 N. Y. 217; *People* v. *Carnal*, 6 ib. 463; *Ely* v. *Holton*, 15 ib. 595; *Gilman* v. *Tucker*, 128 ib. 190; *Van Rensselaer* v. *Secor*, 32 Barb. 469; *Main* v. *Davis*, Ib. 468; affirmed Ct. App., 31 How. Pr. 639.)

Individuals not under legal disability can wage their litigations upon equal terms as to their liability for their acts, omis-

sions, contracts and representations; but the liability of municipal corporations or of their officers is often so dependent upon the power given them by statute that the limitations upon that power sometimes compel a judgment against the individual contrary to the merits. Before the amendment of the Constitution in 1874, now sections 9 and 10 of article 8, which prohibit either state, county, town or village from making gifts or loans except for the public purposes duly committed to their several care, this court held that the legislature by enactments somewhat like the one before us could direct the levy of a tax upon the taxable property of a county, city, town or village, as the case might be, and appropriate the same to the payment of the claim of an individual who had been defeated in an action brought by him to recover the same claim. (*Town of Guilford* v. *Board of Supervisors*, 13 N. Y. 148; *Brewster* v. *City of Syracuse*, 19 ib. 116; *Darlington* v. *Mayor, etc., of N. Y.*, 31 ib. 164; *Brown* v. *Mayor, etc., of N. Y.*, 63 ib. 239; *People ex rel. Conway* v. *Board of Supervisors*, 68 ib. 119; *People ex rel. Witherbee* v. *Board of Supervisors*, 70 ib. 228; *Mayor, etc., of N. Y.* v. *Tenth National Bank*, 111 ib. 446.) The case last cited was decided in 1888, but involved an act passed in 1874. The amendments referred to took effect in 1875. In *Wrought Iron Bridge Co.* v. *Town of Attica* (119 N. Y. 204) the plaintiff, under a contract with the commissioner of highways, who was directed by the town board to make it, built a highway bridge for the agreed price of $3,975; the commissioner accepted the bridge, the public used it, and the auditing board of the town audited the bill, and the electors of the town in their annual town meeting voted that the supervisor should provide for its payment. This was not done, and the plaintiff sued the commissioner for the contract price and was defeated because the proceedings were unauthorized. In 1887 the legislature legalized the proceedings of the town board, commissioner of highways, auditing board, and of the town meeting in the matter, and authorized the plaintiff to sue the town to recover what his labor and materials were worth. He did so, and his recovery

was sustained. Judge O'BRIEN, speaking for the court, although without referring to these provisions of the Constitution, said : "The principle that claims, supported by a moral obligation and founded in justice, where the power exists to create them, but the proper statutory proceedings are not strictly pursued or for any reason are informal and defective, may be legalized by the legislature and enforced either against the state itself or any of its political divisions, is, we think, now well settled."

We think this rule applies to these amendments. (See *Cole* v. *State*, 102 N. Y. 48 ; *O'Hara* v. *State*, 112 ib. 146.) We may also refer to *Matter of Jensen* (44 App. Div. 509) and *Matter of Straus* (Ib. 425), not as authority, for we do not know whether either case has been appealed; but for able discussions of the question. The distinction between the gratuity which the Constitution now forbids and the meritorious claim which it permits municipal bodies to satisfy, notwithstanding judgment adverse to the claimant, is apparent. Where such final judgment is upon the merits, for the legislature to vacate or disregard it and direct the levy of a tax to pay it, either without a new trial or with judgment upon it, would be the bestowal of a gratuity. But where such judgment is not upon the merits, but because of some defect in the authority of the officers to bind the municipal body for which they assume to act, and thus in good conscience is not decisive against the justice of the claim, the legislature may, in order that justice shall prevail, direct its re-examination and determination, and, if found to be just, direct that it be provided for by taxation. The limitations which the law wisely imposes upon the powers of public officers and their methods of exercising them may sometimes result in vesting in the municipal body, without any fault of the individual, his money or labor or their products beyond remedy or recall, except by special legislative action. The legislature may ratify what it might originally have authorized, and it seems to be right that it should have the power to relieve against the special injustice which may sometimes result from the limitations it has

imposed upon the authority of the officers which it has empowered with the administration of its municipal creations. Whether in a given case the legislature has kept within its power or has exceeded it, is, of course, a judicial question. (*Weisner* v. *Village of Douglas*, 64 N. Y. 91.) Tested by this rule this act must fail, for the judgment, which it aims to relieve against, passed against the receiver upon a full examination of the merits and not because of any disability of the county to do right, or lack of liability to respond, as the merits might require.    If the receiver had recovered final judgment against the county in the former action, it is plain that the legislature could not have reopened the case in favor of the county; the judgment awarded the county affirmative relief because of its rights, not negative relief because of its disability, and, therefore, the judgment in its favor is as much above legislative invasion as if it had been in favor of the receiver.

The order should be affirmed, with costs.

PARKER, Ch. J., BARTLETT, MARTIN and VANN, JJ., concur; O'BRIEN and HAIGHT, JJ., dissent.

Order affirmed.