PEOPLE ex rel. DADY v. PRENDERGAST, City Comptroller.

(Supreme Court, Appellate Division, Second Department. April 21, 1911.)

1. MANDAMUS (§ 101*)—PERFORMANCE OF DUTY—ENFORCEMENT.
    Where a statute confers on an officer power in his discretion to investigate a claim and report his opinion thereon, and he refuses to exercise discretion solely on the mistaken ground that he has no legal power to exercise discretion, mandamus lies to compel him to exercise discretion, but not to control the result of such exercise.
    [Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 211–216; Dec. Dig. § 101.*]

2. MUNICIPAL CORPORATIONS (§ 64*)—LEGISLATIVE CONTROL.
    A municipal corporation is a state agency·over which the Legislature has general power save as limited by the Constitution.
    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 156, 157; Dec. Dig. § 64.*]

3. MUNICIPAL CORPORATIONS (§ 70*)—LEGISLATIVE CONTROL.
    The Legislature may, subject to constitutional limitations, refrain from, imposing restrictions on the letting by municipal corporations of contracts for public work, and may leave them subject to the rule governing liability of private persons.
    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 170–174; Dec. Dig. § 70.*]

4. MUNICIPAL CORPORATIONS (§ 76*)—LEGALIZING INVALID ACTS OF OFFICERS —POWER OF LEGISLATURE.
    The Legislature may, within constitutional limits, legalize invalid acts of officers of municipal corporations, and what the Legislature may dispense with lawfully in the beginning it may legalize.
    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 181, 687; Dec. Dig. § 76.*]

5. MUNICIPAL CORPORATIONS (§ 859*)—LEGALIZING INVALID ACTS OF OFFICERS—POWER OF LEGISLATURE.
    Greater New York Charter (Laws 1901, c. 466) § 246, added by Laws 1907, c. 601, authorizing payment of equitable but invalid claims, is not

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in conflict with Const. art. 8, § 10, prohibiting municipalities from incurring any indebtedness except for municipal purposes, when construed as legalizing a claim for work constituting a city purpose invalid because of noncompliance with the charter regulating contracts for work, though the city has obtained a judgment in an action at law on the claim.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1814; Dec. Dig. § 859.*]

6. MUNICIPAL CORPORATIONS (§ 76*)—LEGALIZING INVALID ACTS OF OFFICERS—POWER OF LEGISLATURE.

Under Const. art. 8, § 10, prohibiting any municipality from incurring any indebtedness except for municipal purposes, the Legislature may not legalize claims against a city which are invalid or void because they do not arise from the performance of a municipal purpose, but a claim for work constituting a city purpose which cannot be enforced at law against the city, because of failure to follow statutory requirements, is simply without legal force, and may be legalized.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 181, 687; Dec. Dig. § 76.*]

Appeal from Special Term, Kings County.

Mandamus by the People, on the relation of Michael J. Dady, against William A. Prendergast, as Comptroller of the City of New York. From an order granting a motion for a peremptory writ, defendant appeals. Affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, THOMAS, and CARR, JJ.

Terence Farley (R. Percy Chittenden, on the brief), for appellant.

George K. Jack, for respondent.

Chase Mellen, for the T. A. Gillespie Company, North-Eastern Construction Company, McDonald & Barry and others, as amici curiæ.

CARR, J. The relator entered into a contract with the city of New York in August, 1905, to perform certain work for the city in the construction of its waterworks system in Nassau county. In November, 1905, a supplemental contract was made between the same parties for additional work on the same water supply system. While engaged in the performance of these contracts, he received oral directions from the engineer of the department of water supply to do other work in connection with the testing of wells in certain pumping stations owned by the city, and connecting said stations with the work then being done under his original and supplemental contracts, and also in the construction of a box for measuring coal for use at the pumping stations and various other details. The work so ordered and done was estimated at the reasonable value of $2,298.77. For this work the city refused to pay on the ground that it did not become liable therefor because there was no compliance with various provisions of the Greater New York charter which regulate and control the manner under which contracts could be entered into for the doing of the work in question. The contractor thereupon brought an action to recover the reasonable value of the work. On the trial it was stipulated that the reasonable value of the work so done, and of which the city got the benefit, was $2,298.77, but it was decided by the court that the plaintiff could not

recover against the city because the charter requirements as to letting contracts for the performance of such work were entirely ignored, and judgment was entered accordingly dismissing the plaintiff's complaint. Some time thereafter the contractor presented a petition to the board of estimate and apportionment of the city of New York, setting forth in detail the facts above outlined, and praying that said body may audit and allow his claim against the city of New York as one which it was equitable and proper for the city to· pay. That body referred the petition to the comptroller of the city of New York for investigation and his opinion, as provided in section 246 of the Greater New York charter. The comptroller declined to give the claim any official consideration whatever solely because he was advised by the corporation counsel that he had no power whatever to consider the same.

[1]If section 246 of the Greater New York charter confers upon the comptroller a power in his discretion to investigate this claim and to report his opinion thereon, then, should he refuse to exercise his. official discretion solely on the mistaken ground that he has no legal power to exercise discretion in the premises, he may be compelled by· a writ of mandamus to exercise his official discretion, though the result of such exercise may not be controlled by the court. That such may be done generally is too well settled to require any extended cita-- tion of authorities. This rule was applied in the Matter of Kane v. McClellan, 110 App. Div. 44, 96 N. Y. Supp. 806,. to the board of estimate and apportionment of the city of New York, when it refused to exercise certain powers. of audit and allowance conferred upon it by section 231 of the Greater New York charter on the plea that said section was unconstitutional. The relator in this proceeding did apply,for a writ of peremptory mandamus against the comptroller, requiring him to exercise his discretion on the relator's claim, and from. the order directing. the issuance of the writ this appeal has been taken. to this court.

Section 246 of the Greater New York Charter was added to that in strument as a new section by chapter 601 of the Laws of 1907, and. reads as follows:

"The board of estimate and apportionment may., in its discretion, inquire· into, hear and determine any claim against the city of New York which has been certified to said board in writing by the comptroller as an illegal or invalid claim against the city, but which, notwithstanding, in his judgment it is equitable and proper for the city to pay in whole or in part, and if upon · such inquiry the board by an unanimous vote determines that the city has received a benefit and is justly and equitably obligated to pay such claim and that the interests of the city will be best subserved by the payment or compromise thereof, it may authorize the comptroller to pay the claim and the· comptroller shall thereupon pay the claim in such amount as the board of· estimate and apportionment shall so determine to be just, in full satisfaction of such claim, provided that the claimant shall fully. release the city, upon any such payment, in such form as shall be approved by the corporation. counsel. The provisions of this section shall not authorize the audit or payment of any claim barred by the statute of limitations, nor any claim for· services performed under an appointment in violation of any provision of the civil service law. For the purpose of carrying out the provisions of· this section, it shall be the duty of the comptroller of the city of New York on being thereunto authorized by the said board of estimate and apportion--

ment, to issue and sell corporate stock or revenue bonds of the city of New York in such amounts as may be necessary, and at such a rate of interest as may be fixed by said comptroller. No consent or approval of any board or public body other than the said board of estimate and apportionment shall be necessary to authorize the comptroller to issue such stock or revenue bonds for the purposes of this section."

The history of this enactment is shown in various public documents of the state. It had happened quite frequently that the Legislature had passed laws enabling the board of estimate and apportionment of the city of New York to audit and allow as obligations of the city claims made by various persons for work done or material furnished to and received and used by the city for its benefit, but which claims were not legal claims against the city and enforceable in the courts because of a failure on the part of the city to enter into a binding contract therefor in compliance with the various statutory provisions regulating and controlling the letting of contracts by the city. These laws, however, were not of general scope, but were confined to particular claimants and claims. At the legislative session of 1907, two separate bills of this tenor were passed by both houses of the Legislature, but each was vetoed by the Governor with a memorandum in each case in which the Governor suggested to the Legislature that such matters should not be dealt with by special acts applicable only to particular claims, but should be covered by an amendment to the charter with a scope general to all claims of such nature as the Legislature might see fit to embrace within a general scheme. Public Papers of Governor Hughes, 1907, pp. 102, 151. The Legislature thereupon enacted the law now known as section 246, which is quoted above. The respondent contends that this law of 1907 is unconstitutional if it be interpreted to apply to the claim of the relator, and therefore contends that to uphold the constitutionality of the statute, which should be done if possible, the statute must be so interpreted as to exclude the relator's claim.

[2] Before proceeding to a consideration of the argument of the appellant, it may be well to recall to mind some of the basic principles of law affecting legislative action with regard to muncipal corporations. The general rule is that a municipal corporation is a state agency and creature over which the Legislature has general power save as limited by the provisions of the state Constitution. Atkin v. Kansas, 191 U. S. 207, 24 Sup. Ct. 124, 48 L. Ed. 148; Williams v. Eggleston, 170 U. S. 304, 18 Sup. Ct. 617, 42 L. Ed. 1047; City, etc., v. New Orleans Waterworks Co., 142 U. S. 79, 12 Sup. Ct. 142, 35 L. Ed. 943; Essex Public Road Board v. Skinkle, 140 U. S. 334, 11 Sup. Ct. 790, 35 L. Ed. 446.

[3] While the Legislature has in the various charters of municipal corporations surrounded the letting of contracts for public work with defined restrictions, a violation of which excuses a municipality from liability at law even for work done and materials furnished for the benefit and to meet the necessity of the municipal corporation, the Legislature in its power could have refrained from imposing such restrictions and could have left a municipal corporation subject in its work to the same rule of liability as would attach to any private

person or corporation, within such limitations as the Constitution prescribes.

[4] The Legislature has general power again within the constitutional limits to legalize invalid acts of public officers. What it could have dispensed with lawfully in the beginning, it may dispense with lawfully in the end. A familiar example of the exercise of the latter power is to be found in the various acts which confirm taxes which were void in law because of a substantial failure to comply with the directions of the statutes under which an attempt was made to levy a tax. The rule in such cases is that, where a tax is void because of a failure to comply with a provision of statute which the Legislature could have omitted lawfully from the statute—that is, where the defect was not jurisdictional—then the tax so levied improperly may be legalized by a confirmatory act. The principle underlying this rule is not confined to tax cases, but is one of general application.

[5] The provisions of our Constitution which prescribe the limitations of the Legislature as to municipal corporations, and also of the acts of the latter themselves, with regard to the payment of public moneys or the incurring of public obligations, are to be found in section 10 of article 8 thereof. It is there declared in part as follows:

"No county, city, town or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association or corporation, or become directly or indirectly the owner of stock in, or bonds of, any association or corporation; nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town and village purposes."

While this section of the Constitution has been the subject of repeated judicial interpretation, it has not been attempted by any court to define generally what is "a county, city, town and village purpose" within the meaning of this section, but each decision has proceeded upon the special facts of each case. Many things which confront us to-day as municipal activities would not have seemed within a "city purpose" a generation or two ago. The first contention of the appellant as to the inapplicability of section 246 of the Greater New York charter, within the limits of the Constitution, to the case at bar, is that section 246, if applied here, would operate to deprive the city of New York of the benefit of its judgment against the plaintiff in the action which the relator brought against the city as hereinbefore described. Such a result is asserted to be beyond the legislative power, and Matter of Greene, 166 N. Y. 485, 60 N. E. 183, is cited as a controlling authority in support of the contention. The opinion of Landon, J., in that case is a comprehensive, though terse, exposition of many of the principles of law which affect the determination of the case at bar, but, when examined carefully, it does not support the contention in support of which it is here advanced. The facts involved there were, briefly stated, as follows: The receiver of the Merchants' Bank of Lockport brought an action against the county of Niagara to recover the proceeds of certain alleged overdrafts which Arnold as county treasurer had made on said bank, and the proceeds of which he had applied to the payment of certain county obligations.

Arnold was a defaulter, and had stolen or misappropriated considerable of the funds of the county.   He was both county treasurer and cashier of the bank in question.   When making the overdrafts, he left with the bank as security therefor a certain promissory note and likewise a draft, both made by parties named Helmer.   These instruments came into the possession of a Mr. Ellsworth, who refused to surrender them to the receiver of the bank on the ground that they were equitably the property of the county.   In an action brought in equity by the receiver of the bank to determine the equitable ownership of said instruments, it was found by the court that the alleged overdraft on which the plaintiff relied was a fiction and but the result of a juggle in bookkeeping, and that the bank, through its managing officers, knew that Arnold was a defaulter to the county at the time of the alleged overdraft, and was, in fact, advancing to it unlawfully county funds which went to create by species of juggled bookkeeping apparent overdrafts by Arnold.   It was therefore adjudged that the county was the equitable owner of the instruments in question. The judgment in the action in favor of the county was affirmed in the Court of Appeals finally.   In 1900 the Legislature passed an act known as chapter 614 of the Laws of 1900.   "Its letter and purpose are to vacate the judgment obtained by the county and to grant a new trial to the receiver to be appointed specially for that purpose" (opinion of Landon, J.).   The Court of Appeals held that the act in question was unconstitutional and void.   It pointed out the rule that, as between private parties, it was beyond legislative power to deprive a party to a litigation of a judgment obtained by him therein.   It then declared as follows:

"Individuals not under legal disability can wage their litigations upon equal terms as to their liability for their acts, omissions, contracts and representations; but the liability of municipal corporations or of their officers is often so dependent upon the power given them by statute that the limitations upon that power sometimes compel a judgment against the individual contrary to the merits."

The court, through Landon, J., then proceeded to point out numerous instances where that court had upheld legislation which had legalized claims against municipal corporations which were invalid because of the violation of statutory requirements, even after the invalidity of said claims had been determined judicially.   What are now sections 9 and 10 of article 8 of the present Constitution were adopted originally as amendments in 1874, which took effect January 1, 1875. Many of the cases so cited related to laws enacted prior to said amendments, but the case of Wrought-Iron Bridge Co. v. Town of Attica, 119 N. Y. 204, 23 N. E. 542, arose under an act passed in 1887, while the Constitution stood in form, as to this point, as it does now.   In that case the legislative power to legalize a claim based on equity and justice, though void at law because of a failure to observe statutory requirements, was upheld notwithstanding a judgment had been entered determining the invalidity of the claim.   The Court of Appeals, however, in Matter of Greene, ut supra, distinguished the case before it from the earlier decisions on the ground that in those cases the

judgments relieved from were based not upon the substantial merits, but rested upon the statutory disabilities of the municipal corporations in question. In its opinion it speaks as follows:

"The distinction between the gratuity which the Constitution now forbids and the meritorious claim which it permits municipal bodies to satisfy, notwithstanding judgment adverse to the claimant, is apparent. Where such final judgment is upon the merits, for the Legislature to vacate or disregard it and direct the levy of a tax to pay it, either without a new trial or with judgment upon it, would be the bestowal of a gratuity. But where such judgment is not upon the merits, but because of some defect in the authority of the officers to bind the municipal body for which they assume to act, and thus in good conscience is not decisive against the justice of the claim, the Legislature may, in order that justice shall prevail, direct its re-examination and determination, and, if found to be just, direct that it be provided for by taxation. The limitations which the law wisely imposes upon the powers of public officers and their methods of exercising them may sometimes result in vesting in the municipal body, without any fault of the individual, his money or labor or their products beyond remedy or recall, except by special legislative action. The Legislature may ratify what it might originally have authorized, and it seems to be right that it should have the power to relieve against the special injustice which may sometimes result from the limitations it has imposed upon the authority of the officers which it has empowered with the administration of its municipal creations."

The principle upon which the court in that case declared the statute there in question unconstitutional and void was that the judgment from which relief was sought was based upon the substantial merits of the controversy, and in no way rested upon any statutory exemption of the defendant from liability as a municipal corporation. It is not intelligible why Matter of Greene, ut supra, has been cited to this court as an authority for the proposition advanced by the appellant. It is further contended by the appellant that, if section 246 of the charter is to be upheld as constitutional, it must be so interpreted as to exclude claims which are "void" and restricted to claims which are "invalid." It is argued that "invalid" claims are those only which arise from some irregularity in the method of following the statutory requirements; while "void" claims are those which arise from a total failure to follow the statutory directions. The distinction is rather shadowy, and has no substantial basis so far as this case is concerned. A claim which cannot be enforced at law against a municipal corporation because of statutory limitations is in the eye of the law as void as it is invalid. It is simply without legal force.

[6] There are, of course, a class of claims against municipal corporations which, under the Constitution, cannot be legalized by statute, and these claims are "invalid" or "void" because they do not arise from the performance of "a county, city, town and village purpose," as provided in section 10 of article 8 of the Constitution, as aforesaid. But the claim set up in the petition herein arises from the performance of a "city purpose," for it is based upon work done and materials furnished to the city in the exercise of a "city purpose" in constructing a city water supply system. Examples of claims which cannot be legalized against municipal corporations may be found in the decisions in the following cases: Chapman v. City of New York, 168 N. Y. 80, 61 N. E. 108, 56 L. R. A. 846, 85 Am. St. Rep. 661; Stemmler

v. Mayor, etc., 179 N. Y. 473, 72 N. E. 581; Matter of Jensen, 44 App. Div. 509, 60 N. Y. Supp. 933; Matter of Straus, 44 App. Div. 425, 61 N. Y. Supp. 37. None of these cases last cited has any application to the facts in the case at bar. The learned counsel for the appellant calls our attention to two authorities in California which support the contention of the appellant. These decisions are Conlin v. Board of Supervisors, etc., 99 Cal. 17, 33 Pac. 753, 21 L. R. A. 474, 37 Am. St. Rep. 17, and Conlin v. Board of Supervisors, 114 Cal. 404, 46 Pac. 279, 33 L. R. A. 752. Each of these decisions relates to a statute which directed a board of supervisors to audit and allow at a defined sum a claim against the county for work done for the county, but which was invalid because of failure to observe the statutory regulations as to the letting of public contracts. The legislation in question was held unconstitutional by the Supreme Court of California as an attempt to make a gift or gratuity of public funds. The constitutional provision there in question provided as follows:

"The Legislature shall not have power to make any gift or authorize the making of any gift of public money to any individual, municipal or other corporation."

In both of these cases the California court declined to recognize any distinction between a mere gratuity and the payment of a claim resting upon a moral obligation, but without enforceable legal basis. As before indicated, a broader rule of interpretation has been applied in this state, and one which commends itself to a common sense of justice.

The order should be affirmed, with $10 costs and disbursements. All concur.