LEE B. WEBB, a Taxpayer of the Town of Orange, Schuyler County, N. Y., Respondent, *v.* ROBERT BELL, and WILLIAM J. TUCKER, as Supervisor of the Town of Orange, N. Y., and THE BOARD OF SUPERVISORS OF THE COUNTY OF SCHUYLER, N. Y., Appellants.

*A taxpayer's action to restrain payment of a claim — loan to an overseer of the poor — proof insufficient to sustain it — waiver of the defense of the Statute of Limitations by a town board.*

An application for a writ of mandamus, made in 1895, to compel the payment of a claim arising upon two notes given in 1886 by the supervisor of a town, one of them pursuant to a resolution of the town board, to secure the payment of moneys advanced to the supervisor for the purpose of paying poor orders of said town, and upon which no payments had been made except by the supervisor in question without authority from the town, was denied by the Special Term. The Appellate Division affirmed the decision upon the ground that the claim was unauthorized in its origin, was barred by the Statute of Limitations, and was not above suspicion as to its merits, and that a rescission by the board of town auditors of an alleged audit of the claim was effectual.

Pending an appeal to the Court of Appeals the claim was again presented to the
board of town auditors and it was verbally stated on behalf of the claimant
that if the claim was allowed the appeal would be withdrawn. The board
allowed the claim, the order for its payment being signed by three of the
board, two of whom were interested in the transaction.

*Held,* that a suit would lie by a taxpayer of the town to restrain payment of the
order, especially as it did not appear that the town was equitably liable for the
amount of the notes ;

That the payment made by the supervisor out of his individual funds did not
affect the town.

*Quære,* whether a town board has the right to waive the bar of the Statute of
Limitations.

APPEAL by the defendants, Robert Bell and others, from a judg-
ment of the Supreme Court in favor of the plaintiff, entered in the
office of the clerk of the county of Schuyler on the 5th day of
April, 1897, upon the decision of the court rendered after a trial at
the Schuyler Special Term.

By the judgment appealed from the defendant Tucker, as super-
visor, etc., and his successors in office, were restrained from paying
over any moneys or delivering any order to the defendant Bell upon
a claim alleged to have been audited in favor of Bell by the board
of town auditors of the town of Orange on or about November 6,
1896, for the sum of $285.15.

*O. P. Hurd,* for the appellants.

*Owen Cassidy* and *Charles M. Woodward,* for the respondent.

MERWIN, J. :

The claim in controversy has its origin in two notes, of $100 each,
made by George Kels, as supervisor of the town of Orange, pay-
able to Robert Bell or bearer, one dated February 12, 1886, and the
other April 17, 1886, and each payable the first day of January
following. The first one contains the statement, " being for money
loaned of him as per a resolution of the board of town auditors of
said town, passed Feb. 2, 1886," and the other contains the state-
ment, " the money being loaned to pay an indebtedness of the town
for the year 1885, for support of poor." It appears that on Febru-
ary 2, 1886, the town board adopted the following resolution :
" *Resolved,* that the supervisor of the town of Orange be author-

ized and empowered to loan the sum of $100, upon the credit of said town, to pay the indebtedness of the said town, to be used as a fund for the payment of poor orders of said town, over and above the sum appropriated for the same, at the rate of six per cent. per annum."

No resolution of the board is shown as to the second loan. The amount of these notes was advanced by Mr. Bell to Mr. Kels at about their respective dates. The latter testifies that he thinks he paid the moneys over to Mr. Hungerford the poormaster, soon after he received it. Mr. Hungerford, the poormaster for 1886, testifies that he received $200 of Mr. Kels all at one time; that in his settlement with the town board that year there is no account of any money received from the supervisor, and that he thinks he received the $200 in February, 1887. He testifies, generally, that he spent the money for the support of the poor of the town. It does not appear how his accounts stood on his settlement with the board. Mr. Kels in 1890, after he ceased to be supervisor, paid on these notes the sum of $42.55 from his own funds, without any authority from the town board. In 1894, Mr. Webb, the present plaintiff, was supervisor, and at the meeting of the board of town auditors in November, 1894, the claim of Mr. Bell upon these notes was presented. Instead of auditing it, they made an order in the following form : " There is due Lee B. Webb, on settlement of his accounts against the town of Orange, $263.45 from said town. The supervisor will pay him or bearer that amount when in funds." This is dated November 8, 1894, and the amount represents the claim of Bell, and, as far as there was any audit, that was intended to refer to the claim of Bell. On November 17, 1894, the board of auditors met and passed a resolution rescinding this order. Thereafter, in May, 1895, Mr. Bell applied to the Supreme Court for a writ of mandamus against Webb, as supervisor, to compel him to present the claim of Bell to the board of supervisors at its next meeting, and cause the amount of the audit to be included in the amount to be raised and collected by tax upon the property of the town. The court at Special Term, after hearing both parties, denied the application. Mr. Bell appealed, and thereafter the order of the Special Term was affirmed by this court. (*Matter of Bell* v. *Webb*, 4 App. Div. 614.) It was there said that, apart from the alleged audit, the

claim was unauthorized in its origin, was barred by the Statute of Limitations, and was not above suspicion as to its merits, and that the rescission of the audit to Webb was effectual. Mr. Bell appealed to the Court of Appeals, and this appeal was pending in the fall of 1896.

At the annual meeting of the town board in November, 1896, Mr. Bell presented a claim for $380.28, consisting of $280.28, stated to be the amount of the two notes, and $100 as counsel fees on the mandamus proceedings. This was allowed at $285.15, which was evidently intended to be the amount of the notes. The order given to Mr. Bell is signed by only three of the six members of the board. Those signing are Mr. Tucker, the supervisor, Mr. Kels, a justice of the peace, the same man who gave the notes as supervisor, and Mr. Barkman, a justice of the peace, who was at the time the attorney for Mr. Bell in the mandamus suit. The abstract or certificate of all the accounts audited, including this one, made up for presentment to the board of supervisors, was signed by all the members of the board. It was verbally stated on behalf of Mr. Bell, at the time of the presentment of his claim, that if the board allowed it, it would be a final settlement of the matter, and the appeal would be withdrawn. Sometime before this, Mr. Bell had brought a suit against Mr. Kels individually for the amount of the notes. This suit was discontinued, Mr. Kels thinks, shortly after the meeting of the auditing board, and Mr. Webb thinks shortly before. The delivery and payment of the order for $285.15 was sought to be restrained in this action, and the court in granting that relief stated that the grounds of the decision were " that the said claim, at the time of its pretended audit, was barred by the Statute of Limitations ; that the town had no authority to loan the moneys claimed to have been loaned ; that the pretended audit was illegal in that it was made by the votes of two men who were financially interested in the payment of the claim, and who, therefore, were unauthorized to vote thereon."

The defendant Bell, in order to maintain the validity of his claim under the audit of 1896, argues that the town equitably owed the debt ; that the board had the right to waive the Statute of Limitations ; that the allowance in 1896 was in the nature of a compromise within the power of the board, and that, therefore, the order was valid.

It is not shown that the town equitably owed the debt. True, the overseer of the poor testifies generally that he paid out the money for the support of the poor, but the state of his account with the town does not appear. It was the duty of the overseer of the poor to lay his account and vouchers before the board of town auditors, and they were required to audit and settle the same and state the balance due from or to the overseer. (3 R. S. [8th ed.] 2116, § 52; Laws of 1845, chap. 334, § 4; Laws of 1890, chap. 420, § 2.) This was not done, and it cannot, therefore, be determined how much, if anything, was due from the town to the overseer for moneys he had properly paid out for the support of the poor. That being so, the amount of the defendant Bell's equitable claim cannot be determined, as, at most, it would not exceed the amount that would have been due to the overseer on a settlement of his accounts.

Assuming the existence of an equitable claim, I doubt very much the right of the town board to waive any bar of the statute that might exist. In *Woods* v. *Supervisors, etc.* (136 N. Y. 403), it was held that the board of supervisors had the power to waive, by proper agreement, the defense of the statute as to claims not already barred. That is not this case. If, however, the power exists and is to be exercised, it should be made by the claimant to clearly appear, more than it does in the present case, that a just debt exists.

Does the element of compromise change the situation? The manner in which the audit was brought about does not commend it, but, on the contrary, points toward collusion. The mandamus proceeding was not against the town, and we are not referred to any statute that gave the town board any control over it. The town had an interest in it, and the electors, at their annual town meeting, might, perhaps, have taken some action about it under subdivision 3 of section 24 of the Town Law as it stood at that time. I fail to see how the board had any right to make any agreement of compromise. Their action was, in effect, an effort to audit the original claim.

It is hardly claimed that the loan was authorized by any one who had authority to bind the town. The claim, as audited, was for the balance unpaid on the notes after applying the payment made by Mr. Kels. That payment did not affect the town. The notes being shown to be invalid as against the town, a case of illegality was

made out that justified *prima facie* the relief given, and the burden was on the claimant to justify in law or equity the action of the board. This, I think, he failed to do.

The judgment should be affirmed.

All concurred.

Judgment affirmed, with costs.