(69 App. Div. 176.)

ROCKEFELLER et al. v. TAYLOR, Supervisor, et al.

(Supreme Court, Appellate Division, First Department. February 14, 1902.)

1. MUNICIPAL CORPORATIONS—ILLEGAL EXPENSES—INJUNCTION BY TAXPAYERS.
   Where expenses are not a proper charge against a town or are unauthorized, their audit is illegal, and payment may be enjoined at the suit of a taxpayer.

2. SAME—REVIEW OF ASSESSMENTS—LIABILITY FOR ASSESSORS' EXPENSES.
   Under Town Law, § 180, subd. 7 (Laws 1890, c. 569, as amended by Laws 1897, c. 227), providing that expenses incurred by a town officer in prosecuting or defending any action against the town or such officer for an official act done shall be a town charge in all cases where the officer is required by law to so prosecute or defend, or is instructed to do so by resolution duly adopted by the town board or at a town meeting, assessors cannot defend at the town's expense proceedings to review assessed valuations made by them, without being instructed to defend by resolution adopted by the town board or at a town meeting; and expenses so incurred by them are not a proper charge against the town.

3. SAME—MALICIOUS ASSESSMENTS—PRESUMPTIONS.
   Under Laws 1896, c. 908, § 254, authorizing the court to award costs against the assessors personally if they have acted with gross negligence and in bad faith or with malice in making an assessment, the failure to impose costs on assessors after making findings of malice and negligence in a proceeding reviewing an assessment does not affect

the findings, and they may be taken as presumptive evidence against the assessors in a proceeding to enjoin the payment of expenses incurred by them in defending the review proceedings.

**4. SAME—UNNECESSARY EXPENSES—PROPER TOWN CHARGES.**

Under Town Law, § 180, subd. 2 (Laws 1890, c. 569, as amended by Laws 1897, c. 227), providing that contingent expenses necessarily incurred for the use and benefit of the town may be charged against the town, where assessors have negligently and with malice and bad faith placed exorbitant and illegal valuations on a taxpayer's property, and have attempted to sustain such assessment in a review proceeding by assuming the defense without direction of the town board, neither such assessors nor those employed by them have any legal claim against the town for the expenses so incurred, though it is claimed such expenses were for the benefit of the town; and hence the audit of claims for such expenses is illegal.

**5. SAME—APPROPRIATIONS—CONSTITUTIONAL PROVISIONS.**

The appropriation of public moneys for the payment of a claim which is neither legal nor equitable contravenes Const. art. 8, § 10, prohibiting the appropriation of public moneys by municipal corporations for other than public purposes.

**6. SAME—INVALID AUDIT—RATIFICATION.**

Where expenses incurred by assessors in defending proceedings to review an assessment are illegal, a resolution by the town board attempting to ratify the action of the assessors in defending such proceeding and incurring the expenses is insufficient to validate the claims for expenses, or the audit thereof; the defense not having been authorized by the town board at the time of the audit, and the litigation having been necessitated by the bad faith and malice of the assessors.

**7. SAME—STENOGRAPHERS—EMPLOYMENT.**

A resolution by a town board expressing the wish of the members that the stenographer to take the testimony in a certain case be a resident of the town is not a sufficient authorization for the employment of a stenographer.

**8. SAME—PUBLIC OFFICIALS—LIMITATIONS OF POWERS—NOTICE.**

Persons employed by town assessors in illegally defending proceedings for the review of assessments have no claims against the town, as those dealing with public officials are chargeable with the limitations of their powers.

**9. SAME—PROCEEDINGS TO ENJOIN—PARTIES.**

In a proceeding, under Code Civ. Proc. § 1925, and Laws 1892, c. 301, § 1, to enjoin the payment of certain expenses incurred by the assessors in defending proceedings for the review of assessments, the members of the town board are properly joined as defendants.

Appeal from special term, Westchester county.

Bill by William Rockefeller and another, in behalf of taxpayers, against Moses W. Taylor, as supervisor of the town of Mt. Pleasant, and others. From a judgment dismissing the complaint (59 N. Y. Supp. 1038) pursuant to a decision rendered on the trial of the issues before the court, plaintiffs appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Charles F. Brown, for appellants.
Daniel P. Hays, for respondent Synnott.
H. C. Henderson, for respondent Millard.
Henry C. Griffin, for town board.

LAUGHLIN, J. This is an action brought by taxpayers, pursuant to the provisions of section 1925 of the Code of Civil Procedure

and section 1 of chapter 301 of the Laws of 1892, to enjoin the pay- ment of certain bills for expenses incurred by the assessors of the town of Mt. Pleasant, Westchester county, in defending certiorari proceedings theretofore instituted by the plaintiffs separably to re- view the assessed valuation of lands owned by them in said town for the years 1896, 1897, and 1898, respectively. There was no vote of the electors of the town, or resolution or other action on the part of the town board, authorizing the assessors to defend the certiorari proceedings. The bills, other than that of the respondent Synnott, were presented to the board of town auditors and audited on' the 23d day of December, 1898, after the termination of the litigation, with full knowledge on the part of the members of said board of all .the material facts hereinafter stated, and of the contents of the deci- sion and final order of the court made in the certiorari proceeding, and without further evidence than the mere presentation of the bills. This action was commenced on the 31st day of December, 1898, and the complaint was served with the summons. Subsequently, and on the 9th day of January, 1899, the town board, by resolution reciting the commencement and purpose of this action, attempted to ratify the action of the assessors in defending said certiorari proceedings and in incurring such expenses. The complaint charges that the bills were "illegal, unjust, and inequitable claims," and were "wrong- fully, collusively and illegally" audited by the members of the board of town audit, each of whom, it alleges, has "connived at the paying of said authorized, illegal, unjust, and inequitable claims." The charge of collusion was eliminated from the complaint upon the trial, but the plaintiffs did not abandon their other allegations of fact tending to show bad faith tantamount to fraud on the part of the members of the board in thus auditing these bills.

The town law (section 180, c. 569, of the Laws of 1890, as amended by chapter 227 of the Laws of 1897) limits town charges to the fol- lowing items:

"(1) The compensation of town officers for services rendered for their respective towns. (2) The contingent expenses necessarily incurred for the use and benefit of the town. (3) The moneys authorized to be raised by the vote of a town meeting for any town purpose. (4) Every sum directed to be raised by law for any town purpose. (5) All judgments duly recovered against a town. (6) All damages recovered against a town officer for any act done pursuant to a direction or resolution, duly adopted by the town board, or at a town meeting duly held; and all damages against any such officer for any act done in good faith, in his official capacity, without any such direction or resolution, may be made a town charge, by a vote of the town, at a town meeting duly held. (7) The costs and expenses, lawfully incurred by any town officer in prosecuting or defending any action or pro- ceeding brought by or against the town or such officer for an official act done, shall be a town charge in all cases where the officer is required by law to so prosecute or defend, or do such act, or is instructed to so prose- cute or defend, or do such act, by resolution duly adopted by the town board, or at a town meeting duly held. All town charges specified in this section shall be presented to the town board for audit, and the moneys neces- sary to pay such charges shall be levied on the taxable property in such town by the board of supervisors. (8) Every sum allowed by, the highway commissioners of a town in which the highways are worked and repaired by the money system of taxation in abatement of highway taxes for the main- tenance of watering troughs."

If these expenses were not a proper town charge, or were unauthorized, then the audit thereof was illegal, and the payment of the claims may be enjoined at the suit of a taxpayer. Talcott v. City of Buffalo, 125 N. Y. 280, 26 N. E. 263; Bush v. O'Brien, 164 N. Y. 205, 58 N. E. 106. It is contended that the audit may be sustained upon the ground that these were "contingent expenses necessarily incurred for the use and benefit of the town," under subdivision 2 of the section of the statute quoted, or that they were "expenses lawfully incurred" by town officers in defending a proceeding brought against them "for an official act done," and that the officers were "required by law" to defend the proceedings "or do such act" under subdivision 7 of said section. It will be observed that if the expenses were not "necessarily incurred," even though they were for the use and benefit of the town, they were not a proper town charge under subdivision 2. It will also be seen that, to make them a proper town charge under subdivision 7, it is necessary not only that the proceedings shall have been brought against the officers "for an official act done," but it is essential, also, that the officers shall either have been required by law, or instructed by resolution duly adopted by the town board or at a town meeting, to defend the proceeding. It is quite clear that the assessors, of their own motion, as town officers, had no duty or interest in defending the certiorari proceedings, further than to make returns thereto. People v. Board of Railroad Com'rs, 160 N. Y. 202–212, 54 N. E. 697. The question of defending should have been relegated to the town, the real party in interest, but even it would not have been interested in sustaining these unjust and illegal assessments. Whether the defense devolved upon the town board under the statute quoted, or rested with the electors, by virtue of the provisions of subdivision 3 of section 22 and of section 23 of the town law (chapter 481, Laws 1897; chapter 280, Laws 1894), need not be decided, for no authority was obtained from either. In People v. Vanderpoel, 35 App. Div. 73, 54 N. Y. Supp. 436, it was held that assessors were not authorized to defend at the expense of the town certiorari proceedings brought to review assessed valuations made by them, without being instructed to defend either by resolution adopted by the town board or at a town meeting.

The certiorari proceeding brought by the plaintiff William Rockefeller in 1897 was prosecuted to a final determination, and it was stipulated that the facts were the same, and that a like disposition should be made of the other proceedings without a trial thereof. The record before us contains the petition, writ, and return in said proceeding and it was stipulated that the allegations of the other petitions, writs, and returns were the same. The entire assessed valuation of all real and personal property in the town was $10,510,-788.25. The original assessment upon the lands of William Rockefeller was $2,529,692.50. After a hearing upon the review day, the assessors reduced this valuation to $2,189,805, and refused to make any further correction. The court upon the trial of the proceeding further reduced it to $343,775. The judgment in the certiorari proceeding, which was received in evidence upon the trial of this action

without objection, finds that the relator's property had been over-
assessed; that the rolls showed "great inequality" between the
assessed valuation upon relator's lands and lands assessed to others
upon the same roll; and it contains the following provision:

"It is further ordered, adjudged, decreed, and decided that the assessment
complained of herein was illegal, in so much as the property of the relator
was overvalued, and was made, so far as Michael J. Martin was concerned,
by and with malice, and by the other assessors through negligence; and it
is further ordered, adjudged, and decreed that no costs shall be allowed to
either party in this proceeding."

The record contains a stipulation that in the certiorari proceed-
ing—

"As originally started, there was no claim that the said assessment of the
relator's property was made through malice or negligence, or any claim
whatever, except that the assessment, as made, was more than the full
value of the property; and that was the sole question to be litigated in
said proceeding."

This stipulation appears to be in conflict with the record. The
petition in the test certiorari proceeding was introduced in evi-
dence, and it contains many express charges indicating gross negli-
gence and bad faith on the part of the assessors. Among other
things, it states that the assessors—

"Have shown great partiality, and in some instances have assessed lands
of great value at low and inadequate sums, and other property of little or
no value at large and unjust sums; that property of like character and value,
or even of greater value, than lands lying in the vicinity of your petitioner,
* * * has been assessed at much less value than the real property of
your petitioner, and in many cases at much less than the full value thereof,
and for no apparent reason, except to discriminate for the benefit of one and
to the prejudice of another; and that said Haight, Martin, and Newman, the
assessors aforesaid, have been grossly unjust and unfair in the assessment
of property of your petitioner, and have assessed his real property, or
much of it, at values and rates arbitrary, capricious, and unequal, as com-
pared with like property of other persons assessed on the same roll, notwith-
standing the fact that such property of other persons was similar in char-
acter and value."

As has been seen, the assessors were made parties to the certiorari
proceeding, appeared upon the trial, and attempted to interpose a
defense thereto. The evidence taken upon that hearing is not in the
record, but we think the findings of malice and negligence were fairly
within the issues, were warranted by the other findings, and author-
ized by section 254 (chapter 908, Laws 1896), which expressly au-
thorizes the court to award costs against the assessors personally
where it appears that they have "acted with gross negligence and
in bad faith or with malice in making the assessment complained
of." The fact that for some undisclosed reason the referee did not
impose costs upon the assessors after making these findings does
not affect his power to make the findings. These findings would
therefore seem to be presumptive evidence, at least, against the
assessors, in whose shoes those employed by them stand in asserting
claims against the town. If, however, these findings are to be con-
sidered as made upon immaterial issues (House v. Lockwood, 137
N. Y. 259, 33 N. E. 595), or if they are not to be deemed controlling,

on account of the stipulation as to a conclusion of law concerning the effect of the record which is before us, and if the respondents are precluded from asserting the rights which they claim by virtue of these findings, still we think other facts disclosed by this record indicate quite clearly that the assessors were grossly negligent or acted in bad faith. The petition for the writ showed that the relators' premises consisted of 620 acres of land, with improvements thereon; that the purchase price of the land was only $125,000; that the cost of the improvements did not exceed $400,000; that the full value of the premises as thus improved did not exceed $350,000, and was in fact only $339,887.50; that he presented to the assessors on review day a verified statement showing the facts in detail, and appeared personally and was sworn and examined by them concerning said statement, and produced another witness familiar with the facts, who was also sworn and examined concerning the same. These facts with reference to the hearing before the assessors and the cost of the premises and improvements were not controverted by the return, and therefore stand admitted (People v. Sutphin, 166 N. Y. 163, 59 N. E. 770); but the assessors in their return allege that the valuation as thus reduced was the actual value of the property. It thus appears that the valuation originally placed on these premises by the assessors was more than seven times the proper assessable valuation thereof as found by the court, and the assessed valuation to which they adhered on the review day was nearly six times the fair valuation as adjudged by the court, and the decision reduced the valuation to within $3,888 of that claimed by the petitioner.

We can readily understand how assessors may err in judgment as to the value of real estate or improvements thereon, and a considerable reduction by the court in the assessed valuation may be no evidence of bad faith on the part of the assessor. But it is inconceivable that these assessors, if they had given any attention to the performance of their duties, could have in good faith fixed this grossly excessive valuation upon the relator's premises. The facts are extraordinary, and overcome the presumption of good faith on the part of the assessors. We think their conduct in originally placing such an unjust, exorbitant, and illegal valuation upon the relator's property, and in refusing to properly reduce the same upon a hearing, and in attempting to sustain the unlawful assessment by their return, and assuming the defense of the action without the direction of the town board or electors of the town, indicates gross negligence, bad faith, or malice. They could have voluntarily corrected their error on review day, or allowed the court to correct it, without expense, by admitting it in their return. If they had done either, or had exercised any care in the performance of their duties in the first instance, the necessity for the certiorari proceeding would not have arisen, and no defense would have been required. They violated their official oaths and statutory duty, and should be liable to the town, not it to them. They were authorized to assess property at its fair value, but instead they greatly overvalued it, through negligence, fraud, or bad faith. When these bills were presented to the board of town auditors, therefore, neither the assessors, nor those employed

by them, had any legal or equitable claim against the town. There is no authority to use the public funds of a town to reimburse an officer, or those claiming under him, for expense brought about owing to his own gross negligence, bad faith, or malice in the performance of his official duties, even though it be claimed that such expenses were incurred for the benefit of the town. Dill. Mun. Corp. (4th Ed.) § 147; West v. City of Utica, 71 Hun, 540, 24 N. Y. Supp. 1075. See, also, Webb v. Bell, 22 App. Div. 314, 47 N. Y. Supp. 989; Id., 162 N. Y. 641, 57 N. E. 1128; Board v. Ellis, 59 N. Y. 620; People v. Board of Sup'rs of Ulster Co., 93 N. Y. 397. The appropriation of public moneys for the payment of a claim which is neither legal nor equitable contravenes that provision of the constitution which prohibits the appropriation of moneys by municipalities for other than public purposes (section 10, art. 8, Const.). In re Jensen, 44 App. Div. 509, 60 N. Y. Supp. 933; Chapman v. City of New York, 57 App. Div. 583, 68 N. Y. Supp. 1135; Id., 168 N. Y. 80, 61 N. E. 108; Bush v. Board, 159 N. Y. 212, 53 N. E. 1121, 45 L. R. A. 556, 70 Am. St. Rep. 538.

It is further contended that the action of the town board subsequent to the audit of these bills validates the claims and audit thereof, but we think not. There must be a limitation upon the powers of inferior officers to ratify acts of other officers, where, as here, the statute expressly required prior authority. The authority of such officers to ratify should be confined to cases where the town has received some benefit, or it may at least in good faith be deemed to have been benefited. Dill. Mun. Corp. (4th Ed.) § 547. In all likelihood, if the assessors had applied to the town board when the certiorari proceeding was instituted, and laid before that board all the facts, the expensive litigation would have been obviated. That this would have been the result of such an application is indicated by a resolution passed by the members of this board on the 22d day of December, 1898, reciting the custom of the assessors in employing counsel in defending their action "on increasing the assessment on some particular pieces of property in our town," thus increasing the town expenses to an alarming extent, "with no apparent benefit resulting therefrom," and prohibiting such employment in the future without authority from the board. The audit was illegal when made. As auditors, they were only authorized to audit what were their proper town charges. It is difficult to see how the members of the board of town auditors could, in the light of all these facts, have acted in good faith; and it is equally difficult to see how subsequently, in their capacity as members of the town board, they could have, in good faith, ratified the action of the assessors and their own audit. Under all the circumstances, they were not free agents to act for the interests of the town after these expenses had been incurred and claims were presented by fellow officials and fellow townsmen. If they were interested only by a sense of public duty, and an application had been made to them in time, instead of authorizing the defense of this unconscionable assessment, presumably, they would have righted the wrong; and, if moved solely by a sense of public duty, it is inconceivable that they should have deemed

these claims a proper or just charge upon the taxpayers of the town. It appears that one, at least, of the board opposed the audit, and no formal vote was taken; but they all signed the certificate of the annual audit of claims, including these. If they had jurisdiction and acted in good faith, probably their audit would not be open to review in a taxpayer's action. Osterhoudt v. Rigney, 98 N. Y. 222. But their audit could be annulled for "fraud or bad faith amounting to fraud." Weston v. City of Syracuse, 158 N. Y. 274, 53 N. E. 12, 43 L. R. A. 678, 70 Am. St. Rep. 472. It may be, as stated in People v. Barnes, 114 N. Y. 317, 20 N. E. 609, 21 N. E. 739, that, where a town officer is authorized to defend a litigation, the board of town auditors has jurisdiction to pass upon the question as to whether or not he defended in good faith. In that case the claim was rejected, and it was sought to compel the audit by mandamus; but in the case at bar the defense had not even been authorized by the town board at the time of the audit, and the litigation was rendered necessary solely through the gross negligence, bad faith, or malice of the assessors, and the board of town auditors were aware of the facts. The case last cited, therefore, is not controlling here.

It appears that on the 13th day of April, 1898, the town board adopted a resolution authorizing the assessors to procure the services of "William Miller and Sylvester See, at ten dollars per day, and Daniel Armstrong, at twenty-five dollars per day, to serve as witnesses in the tax suit of Messrs. Rockefeller." Armstrong was a member of the town board. If these witnesses rendered services in good faith in reliance upon this resolution, it is possible that their claims may be sustained; but there is no evidence or finding to that effect, and the court has found that the services were rendered on the employment of the assessors.

The respondent Synnott claims that his employment was also authorized by the town board. This claim is based upon resolution adopted by the town board on the 4th of February, 1898, reciting that it was the wish of the members "that the stenographer to take the testimony in the Rockefeller case be a resident of the town of Mount Pleasant." This, at most, was a recommendation, not an authorization. His bill was audited on the 15th day of December, 1898, without protest, but we fail to see how that legalizes his claim. All others whose claims were audited concededly rendered their services solely upon the employment of the assessors, and, under the well-settled rule of law, those dealing with public officials are chargeable with the limitations of their power and authority. Lorillard v. Town of Monroe, 11 N. Y. 392, 62 Am. Dec. 120; Brown v. Mayor, etc., 63 N. Y. 239; McDonald v. Mayor, etc., 68 N. Y. 23, 23 Am. Rep. 144; People v. Board of Auditors of Town of Esopus, 74 N. Y. 310, 314; Smith v. City of Newburg, 77 N. Y. 130. There is no injustice in leaving these claimants to their remedy against those who employed them. On the other hand, it would be establishing a bad precedent, indeed, and lead to greater laxity in the performance of official duty, if we should hold that these claims may be properly charged against the town. Beyond this, it would be unjust to the other taxpayers of the town and to the relators, who at their own

expense have established their claims substantially as alleged in the certiorari proceedings, to require them, as taxpayers, to contribute to the expense incurred in this apparently unwarranted defense interposed by the assessors to obstruct the efforts of the relators in obtaining equality and equity in the assessment of these lands.

We think the members of the town board were properly joined as defendants, as it may be necessary to enjoin further action on their part, or to limit their future action on the claims in suit.

It follows from these views that the judgment should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.