RANDOLPH L. BROWN, Suing in His Own Behalf and in Behalf of All Other Taxpayers of the Town of Taylor, Excepting MOREL CALKINS, Plaintiff, *v.* FREDERICK A. WARD and Others, Constituting the Board of Supervisors of the County of Cortland and Others, Defendants.

Supreme Court, Cortland County, April 19, 1926.

Counties — board of supervisors — taxpayer's action to restrain collection of tax levied on property in town to pay for bridge — contract for construction of bridge made by committee of board of supervisors to whom was delegated power to make contract was void under Highway Law, § 262-a — board of supervisors cannot delegate power to construct bridges given it under said section — subsequent attempt at ratification after completion of bridge does not cure illegality — present taxpayer's action is maintainable under General Municipal Law, § 51 — injunction granted.

An injunction will be granted in a taxpayer's action restraining the collection of a tax levied against property in a town for the purpose of paying the town's proportionate share of the cost of the construction of a bridge, where it appears that the board of supervisors delegated to a committee composed of members of the board the power to enter into a contract for the construction of the bridge, for the power which the board of supervisors has under section 262-a of the Highway Law to construct bridges in towns at the joint expense of the county and the towns is a power that cannot be delegated to a committee but

must be exercised by the board acting as a body, and, therefore, the contract for the construction of the bridge in question was absolutely void.

The contract being void *ab initio*, no action by the board of supervisors taken after the bridge was constructed, in an attempted ratification of the acts of the committee of the board, can make the contract valid or authorize the imposition of a tax on the property of the town to pay for the cost of construction.

This taxpayer's action is maintainable under section 51 of the General Municipal Law, for the plaintiff has shown more than a mere illegality; he has shown that under the action of the board of supervisors a cloud has been placed upon his title and that if the tax is permitted to be levied and collected, it will result in damage to himself and in a taxing and waste of his property for an illegal purpose.

TAXPAYER'S action for injunction to restrain collection of a tax.

*O. U. Kellogg,* for the plaintiff.

*Charles H. Gardner,* County Attorney [*Clayton R. Lusk* of counsel], for the defendants.

RHODES, J.   The plaintiff, a taxpayer of the town of Taylor, seeks to restrain the collection of a tax levied upon the property of said town by the board of supervisors of Cortland county, claiming that the tax includes items for bridge construction in said town, which construction was without legal authority because of the fact that the board of supervisors, in matters relating to such construction, failed to proceed in the manner required by the statute. Section 262-a of the Highway Law (as added by Laws of 1918, chap. 327) provides that the board of supervisors of a county may provide for the construction or improvement of a bridge in one or more towns of a county and at the joint expense of the county and town or towns, " as provided in this section."   It then outlines the procedure to be followed by the board.   Assuming to act under the authority thus conferred, and on the 6th day of October, 1924, the board of supervisors adopted the following resolution:

" *Resolved,* that the County of Cortland take over the construction of a bridge over the Otselic River in the town of Taylor as provided by Section 262-a of the Highway Law; and be it further

" *Resolved,* that the County Superintendent of Highways be, and he hereby is directed to prepare or cause to be prepared maps, plans and specifications for the above proposed bridge, and submit to this Board for its approval."

It is insisted by the plaintiff that the board, in so far as it acted or attempted to act in the matter, failed to follow out the procedure outlined by the provisions of said section 262-a, and it is true that in many respects the required procedure was not followed. The defendants insist that in any event, upon this aspect of the case, there was a substantial compliance with the statute.   Whether

this is true or not is unnecessary to be determined because of a defect which appears to be so vital and fundamental as to make void the entire proceeding. After the adoption of the resolution above set forth, and various matters relating to the proposed construction had been brought to the attention of the board, it adopted the following resolution:

" WHEREAS, Under a resolution dated December 26th, 1924, this board provided for certain bridge construction in the town of Taylor, on the Cincinnatus-Taylor-Pitcher Part II, Federal Aid Highway, No. 8161, according to the provisions of Section 262-a of the Highway Law and directed the preparation of plans and specifications for the same; and

" WHEREAS, the county superintendent of highways has at this time presented such plans and specifications; therefore, be it

" *Resolved,* That such plans and specifications be and are hereby approved; and be it further

" *Resolved,* That such board delegates to the highway committee the power and authority to advertise for bids and enter into a contract in the name of this board for the construction of such bridge work as may be necessary for the proper completion of said Cincinnatus-Taylor-Pitcher Part II Federal Aid Highway No. 8161 in the town of Taylor as specifically contained on page 4 of the plans for such highway."

Following the adoption of the resolution last quoted, the highway committee, assuming to act under the authority thus delegated, and on October 21, 1924, entered into a contract with the Luten Bridge Company of York, Penn., for the construction of a bridge over the Otselic river, and for the extension of another bridge, known as the Martin wire bridge, on the same highway. Later on said Martin wire bridge was destroyed by a washout, and on March 31, 1925, the board adopted the following resolution:

" WHEREAS, on February 11, 1925, flood waters undermined one abutment of the bridge at Station D152½ 15 causing said bridge to be destroyed and necessitating the construction of an entirely new bridge at this location. Therefore be it

" *Resolved,* that the highway committee be, and hereby is empowered to enter into a supplemental agreement with the Luten Bridge Company which now holds the contract for the construction of the bridge at Station 155½ 65, and for the proposed lengthening of the bridge now destroyed, which agreement shall provide for the construction of a new bridge at Station D 152½ 15."

Pursuant thereto a contract was entered into on April 9, 1925, by the highway committee with said Luten Bridge Company for the building of said Martin wire bridge, and during the progress of

the work the county superintendent of highways entered into a verbal contract for certain incidental work in connection with such bridge construction with the Luten Bridge Company, and also entered into an oral contract with the Johnson Construction Company for doing certain work of filling in connection with said bridges, and the work of construction was then performed by the contractor. On December 17, 1925, and after the completion of the work, the highway committee made an itemized report to the board relative to the construction of said bridges and thereupon and on December 22, 1925, the board adopted the following resolution:

" WHEREAS, the highway committee of the Board of Supervisors of the County of Cortland pursuant to authority conferred upon said committee by a resolution of the said Board of Supervisors adopted the 6th day of October, 1924, did cause said plans and specifications to be made and did let contracts for the building of two certain bridges in the town of Taylor, Cortland County on the Taylor-Pitcher-South Otselic F. A. State Highway, No. 8161 pursuant to Section 262-a of the Highway Law of the State of New York; and

" WHEREAS, said bridges have been constructed according to said plans and specifications. Be it

" *Resolved*, that the acts of the highway committee in causing said plans and specifications to be made and letting the contracts to the Luten Bridge Company and the Johnson Construction Company be, and they are hereby ratified, confirmed and in all matter appertaining thereto approved by the Board of Supervisors of the County of Cortland. Be it

" *Resolved*, that said bridges be, and the same are hereby formally accepted and approved."

The board of supervisors apportioned one per cent of the cost of construction to the county and ninety-nine per cent of such cost to the town of Taylor, the amount apportioned against said town for such bridge tax being $20,116.98. The assessed valuation of the town is $251,460. The tax for the year levied by the board of supervisors, and which is questioned here, is at the rate of $115.48 upon each $1,000 of assessed valuation of said town. The amount levied by the board against said town for general purposes, including highway purposes, exclusive of said bridge construction, was $35.48 upon each $1,000 of assessed valuation. The amount levied against said town for such bridge construction and not including the taxation for other general purposes, was at the rate of $80 upon each $1,000 of assessed valuation. The town of Taylor is a farming community, its area being about four miles

by five miles in extent. The assessed valuation of all the property in the county of Cortland is $23,628,138.

It will be observed that the board of supervisors by resolution attempted to delegate to its highway committee the power to make contracts for the construction of the bridges in question. Such attempted delegation was contrary to the provisions of section 262-a of the Highway Law (as added by Laws of 1918, chap. 327), which provides, among other things, that " the board of supervisors shall award contracts for the construction or improvement of such bridge * * *." The entering into such contracts and the steps leading to its execution required the exercise of powers legislative in their nature, calling for the exercise of judgment and discretion. When the Legislature delegated to the board authority to provide for the construction of bridges, it did not confer unlimited and unrestricted power, but it specified the manner in which the authority thus conferred should be exercised. The authority of the board being limited, and it having no other authority than that thus conferred, it could exercise such power lawfully only within the authorized limits of the statute.

In *Thompson* v. *Schermerhorn* (6 N. Y. 92) the act of the Legislature empowering the common council of the city of Schenectady to cause the grading, paving and improving of streets and to adopt by-laws and ordinances therefor, provided that in case any owner should fail to comply with such by-laws and ordinances that then the common council might cause the streets in front of the premises of said owner to be conformed to such by-laws or ordinances under the direction of said superintendent. The common council, by ordinance, attempted to delegate to said superintendent the authority to determine how the work should be done. It was held that such attempted delegation was unlawful. The court said:

" The question is, whether this ordinance is in pursuance of the authority given by the statute; and the answer is ascertained, by inquiring whether the common council must, by their ordinance, specify the manner in which the improvement is to be made, or may leave such specification to the city superintendent and a committee of their body. I am satisfied, that the Legislature intended to place the responsibility of determining the mode and manner, or in other words, the plan of the improvement, upon the common council. The trust is an important and delicate one, as the expenses of the improvement are, by the statute, to be paid by the owners of the property in front of which it is made. In effect, it is a power of taxation, which is the exercise of sovereign authority; and nothing short of the most positive and explicit

language can justify the court in holding that the Legislature intended to confer such a power on a city officer or committee. The statute not only contains no such language, but on the contrary, clearly, to my mind, expresses the intention of confining the exercise of this power to the common council, the members of which are elected by and responsible to those whose property they are thus allowed to tax."

In *Matter of Emigrant Industrial Savings Bank* (75 N. Y. 388) the charter of the city of New York required work to be let after advertisement for sealed proposals and a contract with the lowest bidder unless otherwise ordered by a vote of three-fourths of the members elected to the common council. Certain work was done on orders of the commissioner of public works without advertising and without entering into a contract therefor, and without authorization of a vote of three-fourths of the members of the council. The court held this to be unauthorized, and said: " The law confers upon the common council the power and duty of deciding in each particular case whether those provisions shall be dispensed with, and requires a vote of three-fourths of all the members elected, to accomplish that purpose. This is eminently a discretionary power which cannot be delegated. It is their judgment which the law requires and not that of any officer they may designate. There is no provision in the law itself authorizing them to delegate this power, and the case falls within the settled principle, that powers of this description involving the exercise of judgment and discretion cannot be delegated, a principle which applies to public bodies and officers as well as to private individuals. * * * The counsel for the corporation contends that the error is innocuous because it does not appear that the expense was increased by the absence of competition, and a contract. How the fact may be in this particular case it is impossible for us to say, but it is very evident that the Legislature have deemed it a necessary safeguard against fraud and abuses, which it might be difficult if not impossible to detect or remedy, to provide that expenditures beyond a certain amount shall not be incurred without due competition and a contract with security for its performance."

In *Birdsall* v. *Clark* (73 N. Y. 73) the charter of the city of Binghamton provided that the building and maintaining of sidewalks should be done at the expense of adjoining premises and that when the common council should order said work to be done and cause notice to be served on the owner, if it should not be then done within the time specified, the common council should by contract or otherwise cause it to be done. The common council passed a general resolution directing the superintendent of streets, in case the owner should

neglect to do the work within the time specified, to cause the same to be done. It was held that the attempted delegation of authority was unlawful. The court said: " The charter conferred the power upon the council to cause it to be done by contract or otherwise. This requires the exercise of discretion and judgment as to the manner in which the work should be done. Whose judgment is to be exercised? The Legislature has said that it is the judgment of the council, but the latter has attempted to invest the superintendent of streets with its exercise. This they had no power to do. The charter clearly contemplates the action of the council in each case. As to one work, it might be judicious and economical to direct that it be done by contract, and let to the lowest bidder; in another, by contract with a particular person without bidding; in another, partly by contract and partly by day's work, and in another, entirely by day's work; and other terms and directions might be appropriate. The owner who is ultimately to pay the expense has an interest in the manner in which the work is to be done, because it may materially affect the amount of the expense. He is entitled to the judgment of the council on that question. * * * It is a general rule that such powers must be exercised in strict conformity to law, and that any interference by public bodies or officers with the property rights of the citizen can only be justified by clear authority of the statute."

In the case of *Farmers' Loan & Trust Co.* v. *Carroll* (5 Barb. 613, 649), which was a case of a private corporation attempting to exercise powers not authorized by law, the rule is so well stated that I quote it here. The court said: " Where a corporation relies upon a grant of power from the Legislature, for authority to do an act, it is as much restricted to the mode prescribed by the statute for its exercise, as to the thing allowed to be done. In this case the Legislature say to the company, you may take conveyances in trust, and execute such trusts as are declared in the conveyances. It does not say you may take and execute trusts generally."

In *Brown* v. *Mayor* (63 N. Y. 239) certain acts of officials of the city of New York were unauthorized, being in excess of authority conferred by the Legislature, but were afterward validated by an act of the Legislature ratifying contracts made. But in that case the court enunciated a clear statement of the rule applicable. The court said: " The power of the governing body, or of any officer of a municipal corporation, to bind it by contract, is derived from and must depend upon the charter of incorporation, or must be found in some statute conferring it. And when the statute prescribes the mode in which municipal powers shall be exercised, that mode must be pursued, and a contract purport ng to be made

by a corporation, where there is either an absence of all power or where essential prerequisites to its exercise have been disregarded, is a nullity. This doctrine is well settled and is an application of the general rule, that a principal is bound only by the authorized acts of his agent."

In *McDonald* v. *Mayor* (68 N. Y. 23) the charter of the city of New York prohibited the municipal officers from contracting in its behalf for materials save in cases and in the manner prescribed in the charter. A contract was made in violation of such provision, which was held invalid, and the court stated as to such restrictions in the charter: " Quite clearly do they impose upon the paying agent of the defendant a prohibition against an unauthorized expenditure. And are they not also a restraint upon the municipality itself? They are fitted to insure official care and deliberation, and to hold the agents of the public to personal responsibility for expenditure; and they are a limit upon the powers of the corporation, inasmuch as they prescribe an exact mode for the exercise of the power of expenditure."

In the case of *People* v. *Hagadorn* (36 Hun, 610; affd., 104 N. Y. 516) the statute required the board of supervisors, itself, to estimate and set down upon the roll the sums to be paid as a tax upon the valuations as therein set down. The board of supervisors fixed the total equalized valuation of the town and determined the tax to be raised therein, then signed, sealed and delivered to the supervisor of the town their warrant for the collection of the tax, and having affixed the same to the assessment roll adjourned *sine die,* having previously directed the said supervisor to extend the taxes against the persons and property named therein, which after adjournment he did. The court held the levy of the tax to be invalid for the reason that the board could not delegate the power and duty which they were required to exercise in extending the tax.

In *People* v. *Supervisors of St. Lawrence County* (25 Hun, 131) the board of supervisors of the county delegated to a committee the power to locate and purchase a site for a children's home. It was held in that case that the action of the board was legislative in its character and not reviewable by certiorari, which was the form of the proceeding before the court. Nevertheless, the court stated that such attempted delegation of power was without sanction of law and void. The court said: " Nothing is better settled both on principle and authority than this, that rights, privileges and duties conferred or imposed upon public officers and public bodies in the aggregate, cannot be delegated — especially is this so as to subjects and matters where judgment and discretion are to be invoked and exercised. The authority to select a site for the

'Home,' to contract for its purchase and to direct expenditures in the erection of the building, rested with the board, and required the exercise of the judgment and discretion of that body when legally convened for the performance of public duties. Its power and authority could be exercised in no other way. The substitution of a committee to take the place of the entire board, as to matters involving the judgment and discretion of that body, was unauthorized; * * *."

It thus appears that the Legislature by statute devolved upon the board the duty and authority relative to the construction in question. That duty was to be exercised in a particular manner. Its performance involved the exercise of judgment and discretion and could not be delegated. The acts involving construction of the bridges were, therefore, invalid and void.

But it is claimed by the defendants that the board by resolution and otherwise has ratified the acts of the highway committee and of the county superintendent, and all other things necessary in connection with the building of said bridges. The defendants rely particularly upon the case of *People ex rel. Griffiths* v. *Board of Supervisors* (143 App. Div. 722), which was a case where the board of supervisors of Oneida county appointed a committee to inquire into the necessity for a hospital. The committee entered into a written contract for the construction of the building and it was completed. The board was at all times aware that the work was going on, inspected it and approved the acts of the committee. It was held that the board had ratified the acts of the committee and that all such acts were thereby validated. But in that case there appears to have been no restriction or limitation upon the power of the board to construct a hospital, nor any limitation relative to the method of its procedure, and the court in that case said: " The board itself had full power to construct this building and make contracts therefor. It appointed a committee to have direct charge of the business, and all the parties then supposed the committee was acting within its legal authority in making the contract and carrying on the construction. The board knew what was being done, went in a body and inspected the work, and then approved of the action of the committee and paid large amounts made by the committee under the contract and in the construction."

In the case at bar there is a limitation upon the power of the board and the method in which they are to proceed is prescribed and defined. The section of the Highway Law in question (§ 262-a, as added by Laws of 1918, chap. 327) required that the board

7

should award the contracts after procuring plans, maps, specifica-
tions and an estimate. The statute by its express command
required the board to exercise its judgment and discretion, and
such powers and duties could not be delegated.

Defendants also cite the case of *Wallace* v. *Jones* (122 App. Div.
497), where supervisors without being expressly authorized so to
do, had devoted considerable amount of time and incurred large
expense pursuant to a general understanding that each supervisor
should look after the road work and business in his own town.
But it was held to be an act unauthorized because the statute was
not complied with. In that case it was asserted by the defendants
that the acts had been ratified. The court said: " It will be
unfortunate for the defendants if this conclusion shall operate to
deprive them of compensation for services rendered in good faith
to the people of the county, but it is of the highest importance,
and quite essential for the protection and promotion of the public
interest, that at least substantial compliance with the forms and
requirements of the law shall be had. I am unable to assent to
the proposition of the learned counsel for the defendants, in its
application to the facts of this case, that what the board had the
power to authorize in the first instance it could ratify after the
service was rendered, and that the audit of a bill for services
actually rendered and expenses actually paid in matters relating to
the county, and which were within the general supervision of the
joint board, was equivalent to original authority."

In *Rockefeller* v. *Taylor* (69 App. Div. 176) the assessors of the
town, acting in bad faith, made assessments which were grossly
excessive. A proceeding was instituted to reduce the assessments
and such assessments were substantially reduced. The assessors
defended said proceedings and incurred costs. Their claims therefor
were presented to the town board for audit and the claims were
allowed. An action was then commenced by taxpayers to declare
such audit illegal, and the court held that the incurring of such
costs was unauthorized and unlawful and that the audit thereof
was not sanctioned. The authorities of the town insisted that the
acts of the assessors had been ratified, and that, therefore, the
audit was lawful. The court said: " It is further contended
that the action of the town board subsequent to the audit of these
bills validates the claims and audit thereof, but we think not.
There must be a limitation upon the powers of inferior officers to
ratify acts of other officers where, as here, the statute expressly
required prior authority."

In *Lyddy* v. *Long Island City* (104 N. Y. 218) the common council,
without statutory authority therefor, attempted to employ an

attorney.  It was held that it had no authority so to do.  The court said: "It follows, as the necessary result of the want of power on the part of the common council, to create liability by express contract, that it could not legalize such claim by acknowledgment, ratification or otherwise."

In *Hodges* v. *City of Buffalo* (2 Den. 110) the common council attempted to furnish an entertainment for the citizens and guests of the city at the public expense.  It was held that the council had no authority so to do.  It was insisted before the court that the claim therefor could be sustained on the ground that plaintiff having furnished the entertainment, the corporation had received the consideration and was bound to pay although the employment therefor was made without legal authority.  The court said: "It is said to be analogous to a subsequent ratification by a corporation of the unauthorized act of its agent.  I cannot concur in this view of the case.  The doctrine referred to assumes that the principal had power to confer the requisite authority in the first instance.  It cannot be maintained that a corporation can by a subsequent ratification make good an act of its agent which it could not have directly empowered him to do."

In *Brady* v. *Mayor* (16 How. Pr. 432) the charter of the city of New York required that all work above $250 in value should be done by contract on sealed bids let to the lowest bidder.  A contract in violation of this requirement was held to be void and it was held that the subsequent ratification of the contract by the common council, whether before or after the work was done, did not make it binding on the corporation.  The court said: "And it is material to notice, that the invalidity of the contract results from the want of power to make a contract in the manner this was made, for the purposes for which it was made.  It was entirely competent to prescribe in the charter of the city the mode in which and in which alone, contracts should be made.  When the powers of a corporation are limited in the charter, the acts of its officers and agents beyond the scope of those powers, do not bind the corporation.  And when the mode in which the powers of a corporation may be exercised, is especially restricted, the officers and agents may not bind the corporation in any other manner. * * * And have the common council power to waive the original defect in the plaintiff's claim, and by their action affirm his title to recover, so as to give him a right of action notwithstanding the requirements of the charter have not been complied with?  The answers to these questions seem to us inevitable and too obvious to allow of extended discussion.  If either be answered affirmatively, the restrictions in the charter become practically null, and the

officers and agents, through whom alone the corporation can act, may disregard the statute and in practice repeal it.   \*   \*   \*   The corporation can only act through its chosen officers and agents. If they not only may pay for work and labor actually done without a compliance with the statute requisites, but are legally bound to such payment, then no contract is necessary, and the restrictions in the statute are a dead letter. If they may dispense with a contract, then and then only, can they confirm an illegal and void contract, and then also by an acceptance of the work and a confirmation of the contract by resolution, they repeal the statute *pro hac vice.* The relation which the corporation and its officers bear to the subject, the duties they owe to the public, and those upon whom the burden is to fall, and the nature of the powers they possess, forbid us to concede any such force to their acts. By the charter the power is limited, and it is a familiar rule that corporations can only bind themselves by contracts they are expressly or impliedly authorized to make.   \*   \*   \*   Here, neither the officers of the corporation nor the corporation, by any of the agencies through which they act, have any power to create the obligation to pay for the work, except in the mode which is expressly prescribed in the charter; and the law never implies an obligation to do that which it forbids the party to agree to do. And for the like reason the defendants cannot be treated as ratifying the unauthorized acts of its agents. The difficulty lies not merely in the want of original power in the agents to make the contract, but in the want of power in the corporation itself to make the contract otherwise than in the mode prescribed by the charter.   \*   \*   \*   An express resolution directing the plaintiff to perform the work would not have been valid or bound the defendants, and a resolution in any terms ratifying what is done by the officers of the corporation in violation of the charter, can have no greater effect."

In the same case in the Court of Appeals (20 N. Y. 312) the court said: " The action of the common council in confirming the assessment roll cannot aid the plaintiff, upon any principle with which I am acquainted. That body could not make the contract originally; and if a lawful one has not been made by the officer to whom that duty was committed by law, it cannot be helped out by any resolution of the council. The action has no force as an estoppel."

In *Cowen* v. *Village of West Troy* (43 Barb. 48) the village trustees attempted to delegate certain authority to a street commissioner, contrary to the provisions of the statute. Such act was held to be unlawful and unauthorized and the court said: " It is said that the defendants ratified the contract by auditing the bill, and by the

payment of part of the amount. Even a subsequent ratification of the contract, whether before or after the work was done, does not make the contract obligatory upon the corporation."

In *Smith* v. *City of Newburgh* (77 N. Y. 130) the common council attempted to enter into a lease in violation of the provisions of the charter. The lease was held unauthorized and void. The question of ratification was argued before the court. The court said: " There is no valid ground for claiming that either the special election, or any resolutions or acts of the water commissioners, or the payment of rent, ratified the acquisition of this property. * * * It is admitted by the answer that the defendant, for a portion of the time, let out said premises for the pasturage of cattle; but this, we think, was not sufficient to bind the defendant, for no such ratification of an illegal act can bind a corporate municipality. A subsequent ratification cannot make valid an unlawful act without the scope of corporate authority. An absolute excess of authority by the officers of a corporation, in violation of law, cannot be upheld; and where the officers of such a body fail to pursue the strict requirements of a statutory enactment, under which they are acting, the corporation is not bound. In such cases, the statute must be strictly followed; and a person who deals with a municipal body is obliged to see that its charter has been fully complied with. When this is not done, no subsequent act can make the contract effective."

In *Peterson* v. *Mayor* (17 N. Y. 449) the common council of the city of New York had general authority to build markets and there appears to have been no express restriction or limitation upon such powers. An architect prepared plans at the request of a committee not empowered for that purpose. The plans were adopted by the common council with knowledge of the facts and their action was held valid, but the court in its opinion pointed out the rule as follows: " For instance, no sort of ratification can make good an act without the scope of the corporate authority. So where the charter or a statute binding upon the corporation, has committed a class of acts to particular officers or agents, other than the general governing body, or where it has prescribed certain formalities as conditions to the performance of any description of corporate business, the proper functionaries must act, and the designated forms must be observed, and generally no act of recognition can supply a defect in these respects."

Lastly the defendants insist that this action cannot be maintained under section 51 of the General Municipal Law, upon the ground that something more than an illegality must be shown in order to justify the intervention of the court. I think that

more has been shown by the plaintiff. If the foregoing conclusions are correct, it not only appears that the attempted action by the board of supervisors was unlawful and not permitted, and beyond the power conferred by the Legislature, but that pursuant to the action of the board a cloud upon plaintiff's title has been created and that if a tax is permitted to be levied it will result in damage to himself and in a taxing and wasting of his property for an illegal purpose. I think this case is distinguishable from *Western New York Water Co.* v. *City of Buffalo* (242 N. Y. 202), cited and relied upon by the defendants. There it appears that officials of the city of Buffalo illegally furnished water to parties outside the municipality. The court held that while the act was illegal, no damage to the plaintiff in that case had been shown and relief was denied. The court said: " Mere illegality is not enough. The very nature and purpose of a taxpayer's action like the present ·one presume that there will be more than illegality in order to enable him to intervene. The basic theory of such an action is that the illegal action is in some way injurious to municipal and public interests and that if permitted to continue it will in some manner result in increased burdens upon and dangers and disadvantages to the municipality and to the interests represented by it and so to those who are taxpayers."

In the case at bar it clearly appears that such results will follow the levying of the tax if permitted. (See, also, *Bush* v. *O'Brien*, 164 N. Y. 205.)

In the case of *Talcott* v. *City of Buffalo* (125 N. Y. 280) the court said concerning such tax: " Full force and effect can be given to the statute by confining it to a case where the acts complained of · are without power, or where corruption, fraud or bad faith, amounting to fraud, is charged."

In the case at bar it appears that the acts complained of were illegal because done without authority. (See *County of Monroe* v. *City of Rochester*, 154 N. Y. 570; *Rumsey* v. *City of Buffalo*, 97 id. 114; *Trumbull* v. *Palmer*, 104 App. Div. 51.)

The act is a remedial statute and is to be liberally construed for the purpose of protection to taxpayers. (*Queens County Water Co.* v. *Monroe*, 83 App. Div. 105; *Stetler* v. *McFarlane*, 230 N. Y. 400.)

As was said in the very able opinion of Mr. Justice DAVIS on the application before him in this action for a temporary injunction: " For excellent reasons of public policy, courts are and should be slow to interfere with the orderly and speedy collection of the public revenues. In order that an injunction may issue, the grounds of illegality must be clear and an imperative reason therefor exist.

There must be something more than mere errors or irregularities in the proceedings leading up to the levying of the tax, and something more than technical objections or circumstances of hardship in the particular case."

If the case involved merely irregularities or technical objections upon the ground that the statute was not fully complied with, the plaintiff should not be heard herein. But the facts show that the acts of the board were without authority and were, therefore, unwarranted, illegal and void. If acts such as are complained of here can be performed in disregard of the limits of delegated authority, and then ratified by the body whose authority is thus limited, then in any similar case any such body can in effect nullify and repeal the act of the Legislature limiting the authority of such body, and such result can be accomplished by the simple expedient of ignoring the limitations imposed by the Legislature, and thereafter attempting to ratify such unauthorized acts: I do not see how the acts under consideration here can be validated without ignoring and going contrary to the settled law of this State, established by a long line of decisions. It is true that courts should be slow to interfere with public boards and bodies in the exercise of their functions, but by the same token a more imperative duty devolves upon the courts to uphold the sovereign mandates of the Legislature and to take care that they be not nullified or disregarded by subordinate bodies empowered to act only within the limits delegated by such Legislature.

Undoubtedly the members of the board, the highway committee and the county superintendent were actuated by good faith and by a desire to carry on the business intrusted to them expeditiously and economically and for the public welfare, and undoubtedly they believed that their acts were lawful. No fraud or corruption is involved. Nevertheless, where such a severe burden is attempted to be imposed upon taxpayers of a town, such burden must find its support in acts legal and authorized. When thus unsupported, the taxpayer is entitled to be relieved from so serious an invasion of his property rights.

For the reasons stated, the plaintiff is entitled to an injunction restraining the collection of the tax in question, with costs.