WITTGREN v. WELLS BROS. CO. OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. December 30, 1910.)

MASTER AND SERVANT (§ 220*)—BRICKLAYERS—ASSUMPTION OF RISK.

An employer is not liable for death of a bricklayer caused by a projecting and unanchored stone toppling from a wall on which decedent was placing an iron plate, on the theory that insufficient scaffolding was provided, where decedent went on the wall without direction to do so and without previous notification to the employer that no scaffolding or insufficient scaffolding had been provided.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 631; Dec. Dig. § 220.*]

Hirschberg, P. J., dissenting.

Appeal from Trial Term, Richmond County.

Action by Elsa Wittgren, administratrix of Nies Bernhard Wittgren, deceased, against the Wells Bros. Company of New York. From a judgment for plaintiff, and from an order denying a new trial on the minutes, defendant appeals. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, THOMAS, and CARR, JJ.

Theodore H. Lord, for appellant.
Sydney A. Syme, for respondent.

WOODWARD, J. Plaintiff's intestate was employed as a bricklayer in the construction of an eight-story building on Hudson street, borough of Manhattan, on the 24th day of December, 1909, and was directed by his foreman to place an iron plate about 8 by 12 inches in size and half an inch thick, and weighing 12 to 16 pounds, upon the top of one of the walls, for the purpose of furnishing an anchorage

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for further steel work. The walls at the time had reached the eighth story, and on top of the brick walls, at each story, was an ornamental band of stone. This stone was set on top of the brick work, projecting over the line of the wall, and was to be backed up with brick and anchored. This band of stone had been placed on the eighth story, but had not been anchored or backed up by the brick work, so that it projected out over vacant space about one-half the width of the stone. Plaintiff's intestate went to the point indicated to place the plate, climbed on top of the wall, and was engaged in placing the plate when the stone toppled over, and he was precipitated to the street below and instantly killed. The action was brought under the employer's liability act (Consol. Laws, c. 31, art. 14), and the negligence alleged was the failure of the defendant to provide a reasonably safe place to work, or proper "works, ways, and machinery" for the performance of the work. There was some evidence in the case that there was a scaffolding inside of the building and adjacent to the wall where the decedent was called upon to work which had been used by the bricklayers in constructing the front wall, on which the stone had been placed, and the case appears to have been sent to the jury to determine whether this scaffolding was high enough for the plaintiff's intestate to stand upon and perform the work; it being practically admitted that, if it was high enough, it was his duty to have used such platform, while it seems to have been assumed that, if the decedent could not reach his work from this platform, it was necessary for him to climb upon the wall, and that the defendant was negligent for failing to provide a reasonably safe place in which to work.

There was, we believe, a fair conflict of evidence on the question of the height of the scaffolding. Some of the witnesses claimed that the wall was ten feet and four inches in height from the beams on the seventh story to the top of the wall of the eighth, that the horses on which the platform was constructed were five feet high, and that these were placed upon two-inch floor plank, with 2-inch planks constituting the platform, so that the top of the wall was just five feet above the top of the scaffolding, while the decedent was a man five feet and eight inches in height. On the other hand, there were witnesses who testified that there was no scaffolding at the point, while others testified that it was there, and that it was six to seven feet above the top of the scaffolding to the top of the wall, and it was claimed that the work could not be properly done unless it was within the view of the workman. If the case depended upon this question, it seems clear that the testimony was properly submitted to the jury, and there would not appear to be any justification for reversing the judgment. The more serious question raised by the motion to set aside the verdict and to grant a new trial on the grounds specified in section 999 of the Code of Civil Procedure, it seems to us, is whether this case comes within the employer's liability act. The notice provided by the statute was introduced in evidence, over the objection and exception of the defendant, and, if the action is merely one at common law, the plaintiff is not entitled to the benefits of the act.

The defendant objected to the introduction of the notice, "not on

the ground that it was not received, but on the ground that the notice does not state a cause of action within either subdivision 1 or subdivision 2 of section 1 of the employer's liability act, and on the further ground that it does not correctly state the cause of the accident." The notice in question, after alleging the death of the decedent by reason of a fall from the eighth story of the building being constructed by the defendant, avers that:

"The death of said deceased was caused, as said administratrix is informed and verily believes, by reason of the carelessness and negligence of your company, its agents and superintendents, in failing to furnish said deceased a safe and proper place in which to perform the work which he was ordered and directed to perform by your company, its agents and superintendents, in that you carelessly and negligently failed and omitted to furnish to deceased any scaffold or other suitable or safe appliance upon which to stand while performing the work as directed, and in carelessly and negligently directing deceased to stand upon a place which was unsafe and insecure, in that the material comprising the wall upon which deceased was directed by your company, and its superintendents and agents, to stand, while doing the work which he was directed to do, was insecure and improperly fastened, and was loose and unstable, with the result that, when deceased placed his weight upon the same, said material comprising said wall gave way and fell to the ground, precipitating deceased with it, and that you further carelessly and negligently failed and omitted to properly inspect and prepare said wall, or place where deceased was ordered to work, so as to ascertain as to the security thereof, before ordering and directing deceased to work thereon."

Substantially this same allegation of negligence is contained in the plaintiff's complaint, and obviously this is merely the assertion of a common-law right of action for a failure to provide a reasonably safe place in which to work, and in failing to supply reasonably safe tools, machinery, and appliances for such work. There is no allegation of any defect in the condition of the ways, works, or machinery connected with or used in the business of the employer which arose from or had not been discovered or remedied owing to the negligence of the employer or of any person in the service of the employer and intrusted by him with the duty of seeing that the ways, works, or machinery were in proper condition. Subdivision, 1, § 200, Labor Law (Consol. Laws, c. 31). The wall which was in course of construction was not a way, work, or machine connected with or used in the business of the employer, nor is there any defect in its condition suggested. The wall was being constructed after the architect's plans. It was being constructed, we may assume, in the regular way, and its condition at the time of the accident was open and obvious, and was due entirely to the fact that the work had only reached this stage of construction. The plaintiff was at work upon this very job. He was one of the bricklayers who was called upon to put in the bricks back of the stone, and to anchor the same, and the law is well established that a dangerous condition, growing out of the very work in hand, as it progresses, does not impose an obligation upon the master to guard against it in behalf of those who are present and contribute in the course of their employment to the condition. So far as the scaffold is concerned, the allegation was not that its condition was in any way defective, but that the defendant "carelessly and negligently failed and

omitted to furnish to deceased any scaffold or other suitable or safe appliance upon which to stand while performing the work as directed." This, of course, is merely the neglect of a common-law duty. It is practically conceded in the record that the defendant or its superintendent did not direct the plaintiff's intestate to stand upon the wall. The negligence, if any, consisted in directing him to do a particular thing, and then not supplying him with proper appliances for doing the work, in this way forcing him, in a measure, to make use of another way. It seems clear, therefore, that there was no cause of action pleaded or proven under the employer's liability act, at least so far as the first subdivision is concerned.

As we have already pointed out, it is conceded that the defendant did not through its superintendent direct the plaintiff to stand upon the wall. The evidence is merely that:

"There was a man there who gave us orders about what to do. That man's name was James Grady. * * * He gave general orders to bricklayers according to what work was to do. Any work that was to do, he give the orders. He did not do any bricklaying himself."

There is no allegation in the complaint that this man Grady was "intrusted with and exercising superintendence, whose sole or principal duty is that of superintendence," nor does the evidence disclose any such relation. He appears to have been a foreman over the brick work, while the defendants were the general contractors. But, assuming that Grady was a superintendent within the meaning of the statute, the evidence is that he first spoke to one Robinson; that he said, "Robinson, you go over there and set some plates," and that almost immediately he countermanded this, and said: "Never mind, you stay where you are and you go, Wittgren. You stay where you are." This is in substance all of the direction which Grady is alleged to have made to the decedent. There is not a particle of evidence that Grady directed in what manner the decedent should perform the work. All that appears is that in a general way Grady, the foreman, directed the decedent to go to another part of the building to put up some plates, and the only negligence alleged in connection with this is that the defendant did not furnish a scaffold or other proper appliance. It does not appear that Grady gave him any assurances or any orders relating to the use of the wall, and clearly there could be no negligence in merely directing a man to go from one part of a building to another for the purpose of doing some work in connection with his regular employment. There being no negligence of any one shown to be a superintendent within the meaning of the statute, and the only question of negligence submitted to the jury being as to the scaffold which was furnished and its adequacy for the purpose of doing the work, it follows that it was error to permit the plaintiff to introduce the employer's liability notice in evidence; the same having been challenged upon this exact ground. The case was not brought within the provisions of the employer's liability act, either by the pleadings or the evidence. It was not submitted to the jury upon any liability growing out of such act, but upon the common-law proposition that the defendant had failed to furnish a rea-

sonably safe place and reasonably safe tools and appliances, and it was error to permit the introduction of the notice served under the employer's liability act, not only because it has a tendency to prejudice the defendant, but because, being in the case, the rules of law are different. At common law the employé is held to have assumed those risks necessarily incident to the employment, all such risks as are open and obvious, and in this case the proximate cause of the injury was not the absence of a scaffold, but the act of the intestate in getting upon a wall which was obviously dangerous, and which was not designed for the purpose to which he was putting it at the time. The plaintiff was a mechanic, a bricklayer, who was familiar with the construction. He knew as well as the defendant could possibly know that a trimming stone, projecting practically one-half its width over the line of the wall, and neither anchored or sustained by the brick work back of it, which had not yet been put in, was a dangerous place to stand upon at the height of eight stories. He was not commanded to take that position. He was merely directed generally to go and place the iron plates, and this order or direction cannot by any fair process of reasoning be construed into anything more than a direction to go and do the work in a reasonably safe manner. If the scaffold which stood by the wall was not high enough, this fact was entirely obvious to the decedent, and, if the defendant had not furnished proper appliances to reach the work, it was his place to call the attention of the foreman to the fact, and to wait until he was supplied with proper appliances, and not to take a risk which no one had asked him to take, and which was not required by any reasonable construction of the orders which had been given. But the evidence in this case shows that the defendant had furnished plenty of planks for the construction of scaffolds, and if the scaffold which stood there was not high enough into two feet, more or less—the extreme difference suggested by the testimony—it was a very simple matter and well within the scope of the decedent's employment to make use of these planks in building up the platform. The order given was quite as consistent with such action on the part of the decedent as to climb upon this half-completed wall, and, under the facts as they appeared in evidence at the close of the testimony, the complaint should have been dismissed.

We apprehend that it is not actionable negligence on the part of a master to fail to provide tools and appliances necessary to perform any given work. The negligence arises when the master provides tools and appliances which, when used, are not reasonably safe. The master in the case now before us was not bound to furnish a scaffold. He was merely bound, if he did furnish a scaffold, to furnish one which should be safe. The complaint alleges that he did not furnish a scaffold at all, and the proof, we may assume, shows that it did not furnish a platform which the plaintiff's intestate made use of, so that the scaffold was not in and of itself the cause of the accident. It is only by assuming that the decedent was bound to perform the work allotted to him, regardless of the fact that he had not been given a proper scaffold, that there is any foundation whatever for the theory on which this case went to the jury, and, as we have pointed out, the

order did not contemplate doing anything out of the reasonable and ordinary course of procedure in the construction of this building. The defendant had furnished materials out of which the scaffold already on the floor might have been made to afford an entirely safe appliance, and to say that the decedent could close his eyes to this situation and take upon himself the extraordinary risks which were so entirely obvious to him, and charge the master for the results, is to say that the master owes the duty, not of ordinary insurance, but of insuring against the recklessness of the employé. The plaintiff's intestate, if he found himself without proper appliances, was under no obligations to perform the work. He could, in the full discharge of his duties as an employé, call the attention of his foreman to the lack of appliances, and refrain from working until the appliances were furnished, or, as we have suggested, he might very properly have taken the planks provided for that purpose and built up the scaffold to a proper height. This would have been reasonable and safe, and the expense of the time necessary to do the work would have been a proper charge upon the master. When he went beyond this and, without directions or assurances on the part of any one to overcome his own free will in the premises, undertook to perform the work under conditions which he must have known menaced his life, he assumed the risks as a matter of law, and the plaintiff had no right of recovery.

The judgment and order appealed from should be reversed and a new trial granted, costs to abide the event.

JENKS, J., concurs. CARR, J., concurs in result. THOMAS, J., votes for reversal upon the ground that the decedent, without order, direction, or constraint to do so, went on the wall without previous notification to his master that no scaffolding, or sufficient scaffolding, had been provided, that he volunteered to do the work in his own way, and so lost his life. HIRSCHBERG, P. J., dissents.