ELSA WITTGREN, as Administratrix of the Estate of
NILES B. WITTGREN, Deceased, Appellant, *v.* WELLS
BROTHERS COMPANY OF NEW YORK, Respondent.

Master and servant — negligence — knowledge of foreman that
place where he ordered plaintiff's intestate to work was danger-
ous — liability of master.

Plaintiff's intestate, who was a bricklayer employed in putting
up a high building, was killed by a fall while engaged in the work
of putting an iron plate on top of a wall, where there was an orna-
mental band or coping of stone, one-half of which was resting on
the brick wall, and one-half projecting beyond its face.   This stone
work had not been anchored and could not be until the wall was car-
ried higher.   The iron plate was to go on top of the brick wall back
of the stone facing and was to carry an iron beam.   The foreman,
who had knowledge of the conditions and knew that the place was
dangerous, called to plaintiff's intestate, who was working on the
floor beneath, and took him to the place on the wall at which the
plate was to be placed, where they stopped, and the foreman told
him to adjust the plate and hurry up in doing it.   Standing on the
wall at the place where the foreman left him, plaintiff's intestate
proceeded to obey the order.   As he stood there bending forward
on this work, a large stone, forming part of the coping or band, fell
to the ground and he fell with it to his death.   *Held*, upon exam-
ination of the record, that there is evidence from which a jury had
the right to find that plaintiff's intestate took his stand on the wall
under the express direction of the defendant's superintendent; that
the superintendent had knowledge of the danger; and that in the
giving of that direction there was negligence which was chargeable
to defendant.
  *Wittgren* v. *Wells Brothers Co.*, 159 App. Div. 918, reversed.

(Argued January 8, 1915; decided February 5, 1915.)

APPEAL, by permission, from a judgment of the
Appellate Division of the Supreme Court in the second
judicial department, entered December 6, 1913, affirming
a judgment in favor of defendant entered upon a
dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Sydney A. Syme* for appellant. The proof was sufficient to require submission to the jury of the question of defendant's negligence. (*McGlynn* v. *Penn. Steel Co.*, 144 App. Div. 343; 205 N. Y. 574.)

*Theodore H. Lord* and *Lyman A. Spalding* for respondent. There is no evidence of defendant's negligence. (*Romeyn* v. *Sickels*, 108 N. Y. 650; *Dambmann* v. *Met. St. Ry. Co.*, 180 N. Y. 385; *Keefe* v. *Lee*, 197 N. Y. 68; *Simpson* v. *Foundation Co.*, 201 N. Y. 479; *Citrone* v. *O'Rourke*, 188 N. Y. 339; *Perry* v. *Rogers*, 157 N. Y. 251; *Cullen* v. *Norton*, 126 N. Y. 1; *Kumner* v. *Weber*, 151 N. Y. 417.) There is no evidence indicating any act or omission connecting the defendant with the accident. (*Laidlaw* v. *Sage*, 158 N. Y. 73.)

Cardozo, J. The plaintiff sues to recover the damages resulting from her husband's death. He was a bricklayer, and was employed in putting up a building in the city of New York. The front wall of the building had reached the eighth floor. The floor itself had not been laid. On the top of the wall at this point there was a "band course" of ornamental trim. The entire wall was from twenty-eight to thirty-two inches thick. The stones of the band course were about ten inches thick, five inches resting on the wall and five projecting beyond its face. They had not yet been secured by an iron anchor, which the plans required. Indeed they could not be secured till the wall was carried higher. The foreman in charge of the bricklayers had been informed by the stone masons that the brick backing must be constructed before the stone work could proceed. The ironworkers were also clamoring that an iron plate must be set in place to enable them to go on with their part of the common task.

This iron plate was to go on the top of the wall, back of the stone facing, and was to carry an iron beam. Johnson, one of the ironworkers, said to Grady, the foreman or superintendent of the bricklayers, that unless this plate was put in place, the ironworkers would have to leave the job. Thus admonished, Grady said that he would have the plate put there as soon as possible. At that time he was standing on top of a wall parallel with the front wall, and at a height where the beams of the eighth floor were afterwards to be laid. Below him, between the seventh and eighth floors, some bricklayers were standing on a scaffold, laying the brick on one of the inner walls. There were three men, and one of them was the plaintiff's intestate, Wittgren. This scaffold was five feet two inches above the seventh floor. A man standing there would have his eyes about level with the eighth floor. From such a position it would not be possible to put the iron plate in place. Grady called to Wittgren to go up on the wall and adjust the plate. Wittgren thus summoned, picked up his tools and went above. The two men walked along the top of the wall till they came to the front of the building, where the plate was to be placed. At this point they stopped and the foreman told Wittgren to adjust the plate and to hurry up in doing it. Standing on the wall, at the place where the foreman left him, Wittgren proceeded to obey the order. A short time afterwards, as he stood there bending forward on his work, with his back to the street, a large stone forming part of the coping or band course fell to the ground, and the man fell with it to his death.

There have been four trials. On the first the plaintiff's claim was that the defendant was negligent in failing to provide a safe scaffold. The plaintiff had a verdict, which was reversed at the Appellate Division (141 App. Div. 693). The ground of the decision was that the scaffold had not been proved to be unsafe; that the accident had resulted from the use of the wall itself; and that

so far as the evidence then showed, Wittgren had taken his stand there of his own volition, and without the command of any one in authority. On the second trial the jury disagreed. On the third trial the plaintiff had a verdict again. The evidence on that trial was similar, it seems, to the evidence on the trial under review. On appeal to the Appellate Division the judgment was again reversed, and the memorandum of the court puts the reversal on the authority of the previous decision (149 App. Div. 961). A fourth trial has resulted in a dismissal of the complaint. The Appellate Division has now affirmed the dismissal after hearing argument and re-argument (159 App. Div. 918; 161 App. Div. 944); and by the allowance of a judge of this court, the case comes here.

We think there is evidence from which a jury had the right to find that Wittgren took his stand on this wall under the express direction of the defendant's superintendent, and that in the giving of that direction there was negligence. The proof is that he was told to come up on the wall and set the plate. The argument is that this meant that the location of the plate was to be on top of the wall. It did not mean, so the defendant contends, that Wittgren was to take his stand there. But in view of the situation of the parties it could hardly have meant anything else. Wittgren was below, working on the scaffold. The command to come up plainly meant that he should leave the scaffold and station himself above. What follows is consistent with that construction and no other. Wittgren did go up, and in company with the foreman walked along the top of the wall; and the foreman, pointing out the location of the plate, told him to set it in place, and left him on the wall inserting it. In such circumstances it seems to us unreasonable to say that Grady did not order Wittgren to do his work on the top of the wall. At least a jury might infer that such an order was intended. It seems a far-fetched notion to

suggest that Grady expected Wittgren to build some elevation on the scaffold and work from there. He was in a hurry to have the plate in place; he told Wittgren to hurry; he knew that the scaffold as then constructed was too low; and he did not contemplate changes that would have meant delay. He knew also, or should have known, that Wittgren had set other plates while standing on top of a wall. These other plates did not involve danger, for they were located at points where the wall was without ornamental projections, and where the stones were secure and solid. But the fact that the man had worked on the top of the wall at other points is significant as indicating what the foreman must have expected him to do here. To Wittgren the danger may not have been apparent, for the position of the stone was not readily visible from above; nor was it loose to such a degree as to be noticeable to the casual observer. He had not worked upon this wall before, and might not unreasonably rely on the instructions of his superior. The foreman, however, knew the danger, for he had been reminded by the stone contractors that the brick-facing was lacking, and he knew as superintendent that the stone was to be anchored, and that it could not be anchored till the facing was supplied. The plaintiff thus proved the very situation which, according to the opinion of the Appellate Division on the first appeal, would charge the defendant with liability. She gave evidence from which a jury could properly infer that the superintendent had directed her husband to do the work at this very place. Since the place was a dangerous one, and since the jury might find that the danger was known to the superintendent, and unknown to the workman, the superintendent's direction is evidence of negligence. That negligence, under the Employers' Liability Law, is chargeable to the defendant. (*Guilmartin* v. *Solvay Process Co.*, 189 N. Y. 490; *McGlynn* v. *Penn. Steel Co.*, 144 App. Div. 343; 205 N. Y. 574.) The defendant stig-

matizes as an afterthought the plaintiff's claim that her husband had been ordered to stand upon the wall. We cannot say that her conduct of the litigation is subject to that reproach. With varying degrees of emphasis, she has maintained from the beginning her present theory of liability. She stated in her complaint, and even before the complaint, in the notice to the employer, that such an order had been given. Our conclusion is that there was error in the dismissal of the complaint.

The judgment should be reversed, and a new trial granted, with costs to abide the event.

WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, COLLIN, HOGAN and MILLER, JJ., concur.

Judgment reversed, etc.